No. 31,211

THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Plaintiff*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FORD, CHARLES H. REDFIELD et al., *Defendants*.

(27 P. 2d 229.)

Opinion filed December 9, 1933.

*Luther Burns* and *J. E. DuMars,* both of Topeka, for the plaintiff.

*J. V. Severe,* of Dodge City, for the defendants.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an original proceeding in mandamus brought by the Chicago, Rock Island & Pacific Railway Company against the board of county commissioners of Ford county, also the county clerk and county treasurer, to compel compliance with an order of the state tax commission to issue to the plaintiff a refunding warrant in the sum of $476.95 to meet taxes illegally levied upon plaintiff's property.

Upon pleadings, admissions and stipulations of the parties the case is submitted for decision. There is no controversy as to the material facts, a brief summary of which is that the railroad of the plaintiff passes through Ford county, with a branch line extending from Buckland to Dodge City. It passes through a city of the second class, two cities of the third class, six townships, thirteen school districts, and two rural high-school districts, in each of which the plaintiff is a taxpayer, and it also pays taxes on each mile of its railroad in the county for state and county purposes. The entire mileage is located in twenty-four different taxing districts, exclusive of the county.

It appears that six separate banks of the county brought suits against the defendants for certain taxes illegally imposed for the years 1927 and 1928, being levied at the general property rate instead of the intangible tax rate, and judgments were rendered in their favor. The total amount of the illegal taxes against the six banks was $11,446.44, but the proportion received by the county, of the excess levy, was only $1,819, and the claim is that the balance of the plaintiff's claim should have been charged back to the taxing districts which received the benefits of the illegal tax collected.

To meet the judgments mentioned the county commissioners established what it termed the judgment fund to pay its obligations, as well as those of the taxing districts, and levied therefor a tax of .33 of a mill upon all the property in the county, including that of the plaintiff. The plaintiff paid the tax levied, under protest. Besides the protest the plaintiff applied to the state tax commission for relief, and its application was set down for hearing. That hearing was had with both parties present, and that tribunal found and decided that $476.95 had been unlawfully collected from plaintiff for the refund to the banks, holding that that amount should have been charged to the taxing units benefitted by the excess tax collected

and, further, that the county was only under obligation to refund to the extent of the tax on $1,828.21, and that that could have been raised by a levy of .048 of a mill and, therefore, decided and directed the defendant to issue a refunding warrant for that amount. This not having been done, a writ of mandamus is asked compelling the board of county commissioners to comply with the order of the state tax commission. The board of county commissioners declined to comply with the request, and the plaintiff has resorted to mandamus to compel the issuance to it of the refunding warrant.

The contention of the plaintiff is that the state tax commission is vested with full power to review and decide questions such as the imposition of illegal taxation and the refunding of the same when paid under protest, and that its decision on these matters is conclusive.

The contention that it is absolutely conclusive cannot be sustained. It has been held that—

"The tax commission is an administrative body, and its decisions in all matters within the scope of its supervisory power, involving administrative judgment and discretion, are conclusive upon subordinate taxing officials. In the exercise of its functions, the tax commission must as a matter of necessity interpret the tax laws, and such interpretations are *prima facie* binding." (*Robinson v. Jones,* 119 Kan. 609, 612, 240 Pac. 957.)

Thus we see that the decision of the tax commission is only *prima facie* binding and does not preclude this court from examining the questions submitted and the rendering of a proper judgment. As we have seen, certain banks were assessed and required to pay an excessive tax, which was paid under protest. They brought several actions against the board of county commissioners, the county clerk and the county treasurer, to recover the same, and judgments were rendered against the defendants which included not only the amount of the excess tax paid to and received by the county but also amounts received and disbursed to the subordinate districts of the county. The case was prosecuted to judgment, and that judgment was not appealed from and has been acquiesced in for years, and it stands as a finality against the county. How shall the money be procured to pay the judgments? That is provided for in R. S. 19-108, as follows:

"When a judgment shall be rendered against the board of county commissioners of any county, or against any county officer, in an action prosecuted by or against him, in his name of office, where the same should be paid by the county, no execution shall issue upon said judgment, but the same shall be

levied and collected by tax, as other county charges, and when so collected shall be paid by the county treasurer to the person to whom the same shall be adjudged, upon the delivery of a proper voucher therefor."

In this case the board of county commissioners proceeded to meet the judgment in the specific way prescribed by statute by levying a tax upon all the property in the county as is done to meet other county charges. The county could not avoid this duty because it had not received all of the benefit of the excess taxes unlawfully collected. In a case involving the levy of a tax to pay a judgment against the county (*Investment Co. v. Wyandotte County*, 86 Kan. 708, 121 Pac. 1097) there was a claim that the county was not liable on the claim for which the judgment was rendered, it being insisted that the judgment was void. After discussing the principle involved, it was said:

"It follows from the principle stated that in an application for a mandamus to compel the levy of a tax to pay a judgment against a county, the validity of the judgment cannot be successfully assailed by a showing that it was based upon a groundless claim. The authorities sustain this view ·with practical, if not absolute, unanimity." (p. 709.)

There it was contended that the placing of a claim in judgment was no more than an auditing or allowance of a demand to be measured by the character of the original claim which might be ascertained when the plaintiff seeks payment by mandamus, but the court responded by saying:

"The difficulty with this reasoning is that it denies the conclusive effect of the judgment; it conflicts with the proposition that the judgment decides the law as well as the facts, and determines that the county is liable to the plaintiff." (p. 710.)

Since no appeal had been taken from the judgment and it had become final before the tax challenged by plaintiff was levied, the plaintiff is not in a position to ask the court in this proceeding to reëxamine the judgments and determine that only a fraction of the amount named in the judgment had been received by the county and the balance should have been adjudged to other municipalities. As those judgments stand it must be held they are conclusive, and that plaintiff is therefore not entitled to the issuance of the writ. It may be said that although several of the subordinate taxing districts of the county are liable for refunds, it has not been deemed necessary to sue each of them separately. The board of county commissioners acts in a representative capacity in the taxation scheme. As said in *Robinson v. Jones*, supra:

"A board of county commissioners acts in a double capacity. It is a part of the taxing machinery and, as such, subject to control by the tax commission. It is also the governing body of the county, responsible for proper conduct of the county's financial affairs. As such, the board has a special interest in the taxation of all property in the county subject to taxation, in retention of lawful taxes already paid to the county treasurer, and in the prompt collection of lawful taxes due and payable." (p. 612.)

The fact that distribution among the subordinate municipalities has been made of taxes unlawfully collected by the county does not preclude an aggrieved taxpayer from securing the ordinary remedies to obtain taxes wrongfully collected, and that they can recover it from the party that extorted it has been decided in *Hodging v. Shawnee County Comm'rs*, 123 Kan. 246, 255 Pac. 46. Whether plaintiff is entitled to an adjustment of the taxes by the county commissioners on the basis of the benefits received by each municipality, and what remedy, if any, may be employed, cannot be determined in this proceeding.

The writ is denied.

HUTCHISON, J., not sitting.