No. 32,113

THE KAW VALLEY DRAINAGE DISTRICT OF WYANDOTTE COUNTY, *Appellant*, v. FRANK ZIMMER, Treasurer of Wyandotte County, *Appellee*.

(42 P. 2d 936)

Opinion filed April 6, 1935.

· *John E. Blake,* of Kansas City, for the appellant.

*George H. West,* county counselor, for the appellee; *E. S. McAnany, A. L. Berger,* both of Kansas City, and *J. E. DuMars,* of Topeka, of counsel.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from a judgment denying an injunction forbidding the county treasurer of Wyandotte county to return to three taxpayers certain payments of tax moneys made by them under formal protest, which protests were sustained by the state tax commission.

It appears that in August, 1932, the plaintiff drainage district prepared and published its budget for the fiscal year, July 1, 1932, to June 30, 1933. In it the drainage board made an estimate that the expenses which would probably have to be met from its general fund would be $22,495 for the ensuing year, and to meet such expenses it would be necessary to raise $15,000 by a tax levy of three tenths of a mill on all the taxable property of the district. At the time those estimates, budget and levy were determined upon, the district actually had on hand in its general fund the sum of $82,000 in cash.

Taxpayers objected to the imposition of any levy for the general fund for the then current fiscal year because of the large amount of cash already on hand—more than three and a half times as much as the budgetary estimate of the year's expenses required.

When taxpaying time arrived, three railway companies, the Santa Fe, the Rock Island, and the Union Pacific, which have large holdings in the plaintiff drainage district, paid the first half of their current taxes under protest, specifying particularly the levy for the general fund of the district on the ground of its illegality. Through proper procedural steps these taxpayers brought their claimed grievances before the state tax commission for correction. On January 22, 1934, that commission, pursuant to a hearing theretofore had and on notice to all parties concerned, sustained the application of these taxpaying railways for a refund of the excessive and illegal exactions they had been compelled to pay, and directed the county treasurer of Wyandotte county to refund the following sums, out of the protested funds of the plaintiff district which he *ought* to have in his hands:

To the Atchison, Topeka & Santa Fe Railway Co.................... $1840.48
To the Chicago, Rock Island & Pacific Railway Co................ 589.44
To the Union Pacific Railroad Co................................ 447.64

An excerpt from the order of the state tax commission in the Santa Fe case summarizes the facts and the basis for the several orders:

"On July 31, 1933, the Atchison, Topeka and Santa Fe Railway Company filed with this commission its application for the refund of taxes paid under protest in Wyandotte county, Kansas.

.    .    .    .    .    .    .    .    .    .    .    .

"Kaw Valley drainage district general fund:

"According to the budget of the Kaw Valley drainage district, for the year 1932, the needs of the district for the ensuing year totaled $33,742.50. This district had on hand, cash and other revenue totaling $85,328.62. The district proceeded to make a levy of .30 mills, which on the valuation of the district produced $15,900. It is the finding of this commission that the levy made was entirely excessive, due to the fact that the assets of the district were more than sufficient to meet the budget requirements. It is, therefore, found by this commission, that the prayer of the petitioner (The Atchison, Topeka & Santa Fee Railway Company) should be and the same is hereby granted, and the county treasurer is directed and ordered to refund the sum of $1,840.48."

It was to prevent the defendant county treasurer from paying these amounts to these railway companies pursuant to these orders of the state tax commission that this action was begun.

The pleadings developed no issue of material fact, and all the pertinent matters which the trial court should consider in determining the legal questions involved went in by stipulation of parties.

The injunction prayed for was denied; judgment was entered for defendant; and the drainage district brings the cause here for review.

The first point raised by appellant challenges the authority of the county treasurer to withdraw moneys from the general fund of the district without authorization so to do by its board of directors. This preliminary point arises from the fact that when the protested taxes were paid by the railway companies, the county treasurer did not make a separate bookkeeping entry of them, but entered them to the credit of the general fund of the district. The protested moneys, however, were and still are in the actual custody of the county treasurer, although he prematurely and, as it turned out, erroneously distributed them to the general fund and made bookkeeping entries in his accounts accordingly. But the error was a harmless one. Bookkeeping entries, if made erroneously, may be corrected; and in so simple a case as the present the courts will presume that what ought to be done has been done and the moneys of the protesting

taxpayers will be regarded as being still in the undistributed mass of protested taxes in the hands of the county treasurer and available for disbursement by him on the lawful order of the state tax commission. In *Hicks v. Davis,* 97 Kan. 312, 154 Pac. 1030, the action was one in mandamus to compel the state auditor to draw a warrant in conformity with an act of the legislature of 1913 which carried an item of money to reimburse the plaintiff for expenses incurred in the service of the state. One of the defenses urged in the auditor's behalf was that there was no money in the fund designated by the legislature from which the item was to be paid. This court said:

"The auditor suggests that there is no money in the grain inspection fee fund to pay this claim. We assume that this is because the books for the fiscal year ending June 30, 1915, have been closed, and that any balances then existing in that fund have reverted to the general revenue funds of the state. But the books were open when the petitioner filed this action. That crystallized the status of the fund as of that date, and if there were moneys in the grain inspection fee fund at that time, the closing of the books will not bar the petitioner. There is no magic in bookkeeping. Books which have been closed in derogation of a lawful outstanding claim which had been provided for by the legislature must be reopened and the claim paid and the proper entries made to recite the pertinent facts." (p. 317.)

And so here. A mere bookkeeping entry which erroneously credited plaintiff's general fund account in the county treasurer's records instead of entering it *ad interim* in some suitable manner as an item of protested taxes until the validity of the protest should be settled by competent authority is not sacrosanct. It may be corrected as other errors of bookkeeping are corrected in the official and business world many times every day of the year. Were this a more serious matter than it is, the right of the protesting taxpayers to the return of their due could not be defeated because the public official whose duty it was to retain control of the money had failed in that duty. Moreover, if the moneys thus paid under protest had passed into the exclusive control of plaintiff it would be no better off than it is now. It could not withhold such moneys on the just claim of the proper public authority. (*City of Frankfort v. Warders,* 119 Kan. 652, 654, 240 Pac. 652; *Nemaha County Comm'rs v. City of Seneca,* 138 Kan. 895, 898, 28 P. 2d 1034; *Woodson County Comm'rs v. City of Yates Center,* 139 Kan. 519, 32 P. 2d 209; *Greenwood County Comm'rs v. School District,* 139 Kan. 297, 31 P. 2d 723.) On the right of protesting taxpayers to recover moneys unlawfully exacted from them when the illegality

is determined, regardless of what disposition the county treasurer may have made of such moneys, see *Hodgins v. Shawnee County Comm'rs*, 123 Kan. 246, syl. ¶ 3, 255 Pac. 46; *Bank of Holyrood v. Kottman*, 132 Kan. 593, 296 Pac. 357; *Chicago, R. I. & P. Rly. Co. v. Ford County Comm'rs*, 138 Kan. 516, 27 P. 2d 229.

Counsel for appellant cites *Chicago, R. I. & P. Rly. Co. v. Paul*, 139 Kan. 795, 33 P. 2d 304, but in that case no steps were invoked by the aggrieved taxpayer to bring the alleged excessive levy before the state tax commission, which is the administrative board authorized by law to review and correct such matters; nor were its powers invoked by the protesting taxpayer to perfect any right it may have had to recover the amount sued for.

And this leads us logically to appellant's next contention, which is that the state tax commission had no authority to consider and sustain the protest of the railway companies in respect to the general-fund levy of the drainage district for 1932, nor to order a refund of the taxes illegally levied and paid under protest by the railway companies. On this question of law, certain pertinent sections of the tax law will require examination. R. S. 79-1702, in substance, provides that where a taxpayer has a grievance not otherwise remediable he can have redress through the state tax commission, which is given power, among other matters, to order a refund of the amount found to have been unlawfully charged and collected. R. S. 1933 Supp. 79-2005 also directs what preliminary steps a protesting taxpayer shall take to perfect his right to recover taxes illegally exacted. Of what avail would it be for him to conform to these steps if they were not intended by the legislature to lead to their logical fruition?

We note, of course, the legislative declaration in the "cash-basis" law of 1933 that the levying of a tax which raises more money than the needs of a taxing district may require to establish itself upon a cash basis shall not be the basis of a protest, and that all such protests shall be void. (R. S. 1933 Supp. 10-1120.) We construe this section to mean just what it says and no more. The statute does not say—and no reasonable application of the rules of statutory construction would justify its interpretation to mean—that the general provisions of the taxation statute are to be superseded and that an excessive levy of taxes is hereafter to be remediless to an aggrieved taxpayer. The apparent purpose of this statute of 1933 was that in its endeavors to get its fiscal affairs on a cash basis the

taxing district was not to be harassed with litigation because its official board and one or more of its taxpayers might disagree as to the amount of money the budgetary needs of the district would require; and that neither the judgment of the district court nor of this court should be invoked to interfere with the discretion of the taxing officials as to the amount of money required to conform to the purpose of the cash-basis act.

The title to the cash-basis act in which the section under discussion appears reads:

"An act in reference to indebtedness of cities, counties, townships, board of education, municipal universities, school districts, high-school districts, drainage districts, and other municipalities, and providing for the funding of the same, and prohibiting the drawing of warrants or making of contracts under certain circumstances, and providing penalties for the violation of this act." (Laws 1933, ch. 319.)

Clearly this title gave no indication that the act was intended to supersede the powers of the state tax commission; and such has not been the operative interpretation of our taxation statutes since the enactment of the "cash-basis" law.

There may be another good and sufficient reason for not attaching greater significance to R. S. 1933 Supp. 10-1120 than the fair import of its text. Constitutional questions not infrequently arise when the just rights of individuals are altogether suppressed by legislation. In *City of Emporia v. Norton,* 13 Kan. 569, 586, where the construction of a statute authorizing a tax levy was under scrutiny, Justice Brewer said:

"That construction which supports would be preferred to that which destroys the law." (p. 585.)

See, also, *Bailey v. Baldwin City,* 119 Kan. 605, syl. ¶ 2, 240 Pac. 862.

Counsel for appellant invokes the rule announced in *Chicago, R. I. & P. Rly. Co. v. Paul,* 139 Kan. 795, 33 P. 2d 304, where it was held that the making of a higher levy than the published budgetary estimates would appear to require was not a sufficient basis for an action to recover a portion of taxes collected pursuant to such levy, notwithstanding the protest of a taxpayer. The legal questions considered in that case centered about the provisions of the budget law, and the right of taxpayers to be heard before the amount of the tax levy was determined. No issue was raised and no right of the protesting taxpayer to recover was based on the power of the state

tax commission to order a refund in a proceeding properly instituted and prosecuted before that tribunal for redress. The same controlling rule of law disposed of the more recent case of *Kurn v. Miami County Comm'rs*, 141 Kan. 7, 40 P. 2d 321. This present case, in its essential particulars, is governed by the rule announced in *Chicago, R. I. & P. Rly. Co. v. Ford County Comm'rs*, 138 Kan. 516, 27 P. 2d 229. It was there said, *inter alia*, that an order of the state tax commission is only an administrative order, not a binding judgment like that of a judicial tribunal. But such an order is *prima facie* valid, and public officials may and should act upon it, where its validity is not promptly challenged before a court of competent jurisdiction. And if this present proceeding may be regarded as a sufficient challenge of the validity of the tax commission's order, this court has no hesitancy in holding, in substantial accord with the views of the state tax commission and the trial court, that where the published budget showed that the taxing district had two or three times as much cash on hand in its general fund as the budgetary estimates of the current year would require, any levy whatever was entirely excessive; and the commission's order directing a refund of taxes paid pursuant thereto was valid; and the judgment of the trial court refusing to interfere therewith was correct and should be affirmed.

The judgment is affirmed.