No. 35,573

SCHOOL DISTRICT No. 40, IN FORD COUNTY, *Appellee*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CLARK, *Appellant*.

No. 35,574

PROTECTION HIGH SCHOOL, CONSOLIDATED DISTRICT No. 1, IN COMANCHE COUNTY, *Appellee*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CLARK, *Appellant*.

(127 P. 2d 418)

Opinion filed July 11, 1942.

*J. V. Severe*, county attorney, argued the cause for the appellant.

*Howard T. Fleeson*, of Wichita, argued the cause, and *C. H. Brooks, Carl G. Tebbe, Wayne Coulson* and *Paul R. Kitch*, all of Wichita, were on the briefs for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.:   These actions which were tried together were brought by the plaintiff school districts to recover tuition charges from Clark county on account of pupils of that county who attended the high schools maintained by plaintiffs in neighboring counties.

For the high-school pupils residing in the northeastern part of Clark county it is more accessible to attend high school at Bucklin (S. D. No. 40) in Ford county, and for pupils residing in the eastern part of Clark county it is more convenient to attend high school at Protection in Comanche county. The legislature has provided for such situations by authorizing the county superintendent of the county where such high-school pupils reside to permit them to attend some more accessible high school in an adjacent county. Another prerequisite to such attendance is the approval of the governing body of the high school the pupils propose to attend.

The pertinent statute is G. S. 1935, 72-3806. It has been the subject of recent judicial construction. (*Gridley Rural High-school Dist. v. Woodson County Comm'rs*, 150 Kan. 704, 95 P. 2d 972, and in a second case having the same title, *ante*, p. 407, 125 P. 2d 383.) In those cases the plaintiff school district, situated in Coffey county, which had received the Woodson county high-school students, failed to recover its tuition charges chiefly because no provision had been made in the Woodson county budget law and cash-basis law to pay them. Here there is no such difficulty. An estimate of the requisite amount needed to pay plaintiffs' tuition charges was made at $1,000 and a levy to raise that sum was included in the tax levies for the then current fiscal year, 1939-1940.

On or about February 9, 1940, the clerk of the board of district No. 40 presented to defendant his sworn voucher for tuition charges for five Clark county students who attended the plaintiff school for the first five months of the school year, totaling 464 days at 40 cents per day, $185.60; and on or about May 25, 1940, a similar voucher was presented for the remaining four months of the same school year, tuition charges for 393½ days' attendance of the same pupils, $157.40, a grand total demand of $343.

A similar voucher was presented on behalf of the Protection high school for tuition charges for fourteen Clark county students for their entire school year's attendance, 2,463 days at 40 cents per day, a total of $985.20.

These voucher demands were rejected; hence these lawsuits, which were consolidated for trial. Plaintiffs prevailed, and defendant appeals, contending that the prerequisite requirements to subject Clark county to pay the plaintiffs' tuition charges were not strictly complied with. The point is urged that the applications of the students with the proper endorsements of the Clark county superintendent

and the approvals of the plaintiff school boards thereon were not filed with the county clerk of Clark county until sometime in October (or later), and that date was too late to inform the board of county commissioners and the county clerk of Clark county of the required amount to be raised by a levy for high-school tuition. True, the statute (G. S. 1935, 79-2927) directs the governing body of each taxing district to meet not later than August 1, to make up the budget for the ensuing year. Reasoning thus, it is argued that the applications of the students must be filed with the county clerk prior to August 1. Our first Gridley case, cited above, stressed the practical importance that the taxing authority should know in advance what burden of tuition charges would have to be provided for, but we did not say nor intimate that if the approved applications were not filed with the county clerk until a later date that the tuition charges based thereon could not be paid even if a tax levy based upon the county clerk's estimate of the requisite amount were actually made and the money collected.

There is a rule of statutory construction familiar to all lawyers, which is that when the legislature prescribes the time when an official act is to be performed, the broad legislative purpose is to be considered by the courts whenever they are called upon to decide whether the time prescribed by statute is mandatory or directory. If mandatory, there must be strict conformity. If directory, the legislative intention is to be complied with a nearly as practicable. Instances of the latter sort frequently arise, and indeed they are particularly applicable in respect to the official mode of procedure in matters of taxation. For example, it is the duty of the board of county commissioners at its meeting on the first Monday in August to order the proper levies of every sort to be extended on the tax rolls. (G. S. 1935, 79-1802.) Instances are not rare where the board has declined or failed to make a particular levy; mandamus is invoked and a decision may be reached some weeks later holding that the contested levy should be made, and it is then made, although the *directory* time at which it should have been made has passed. Again, the statute says the county clerk shall prepare and deliver the tax rolls to the county treasurer on or before November 1. (G. S. 1935, 79-1803.) If the work of preparing the tax rolls is not completed by the statutory date (and litigation over the legality of levies or other untoward circumstance sometimes causes delay), the statutory date on which the tax rolls should be

delivered to the county treasurer must of necessity be regarded as directory rather than mandatory. Although the tax rolls are not delivered to the treasurer by the time *directed by the statute*, nevertheless we all have to pay our taxes when the belated delivery is made! See discussions on mandatory and directory legislation, in *Jones v. The State of Kansas, ex rel. Atherby and Kingsbury*, 1 Kan. 273; *Board of Education v. Barrett*, 101 Kan. 568, 570, 167 Pac. 1068; *City of Hutchinson v. Ryan*, 154 Kan. 751, 121 P. 2d 179.

It is shown in the record that the $1,000 raised by tax levy to pay tuition charges, and an earlier balance of the same character, aggregating $1,967.40, have been transferred to the general fund of the county, and consequently it is suggested there is now no money in the tuition fund to pay plaintiffs' claims. But since these transfers were made without legal sanction, indeed in violation of the state constitution (art. 11, sec. 5) the money raised by levy to pay tuition charges must be retransferred to where it belongs. Such in principle was this court's ruling in *Hicks v. Davis*, 97 Kan. 312, 154 Pac. 1030. In that case the legislature appropriated an item of money to pay the traveling expenses of L. M. Hicks, a state grain inspector. Payment was to be made out of the grain inspection fee fund. Among the defenses pleaded in behalf of the state auditor who had declined to issue a warrant so that Hicks could draw the money was one "that there is no money in the grain inspection fee fund to pay this claim." On that point this court said:

"We assume that this is because the books for the fiscal year ending June 30, 1915, have been closed, and that any balances then existing in that fund have reverted to the general revenue funds of the state. But the books were open when the petitioner filed this action. That crystallized the status of the fund as of that date, and if there were moneys in the grain inspection fee fund at that time, the closing of the books will not bar the petitioner. There is no magic in bookkeeping. Books which have been closed in derogation of a lawful outstanding claim which had been provided for by the legislature must be reopened and the claim paid and the proper entries made to recite the pertinent facts." (p. 317.)

See, also, *Kaw Valley Drainage Dist. v. Zimmer*, 141 Kan. 620, 42 P. 2d 936.

The judgment is affirmed.

HARVEY, J., not sitting.