No. 40,408

MAGNOLIA PETROLEUM COMPANY, *Appellant,* v. STATE COMMISSION OF REVENUE AND TAXATION, and ROY N. McCUE, IRA C. WATSON and JOHN L. MACNAIR, As Members of and Constituting Said Commission, *Appellees.*

(309 P. 2d 644)

Opinion filed April 6, 1957.

*Henry V. Gott,* of Wichita, argued the cause, and *W. F. Lilleston, George C. Spradling, George Stallwitz, Ralph M. Hope, Richard W. Stavely, Charles S. Lindberg,* of Wichita, and *John E. DuMars, Clayton M. Davis* and *Mark L. Bennett,* of Topeka, were with him on the briefs for appellant.

*Thomas M. Burns* and *Oliver H. Hughes,* of Wichita, argued the cause, and *George B. Collins, Robert Martin, K. W. Pringle, Jr., W. F. Schell* and *George R. Docking,* of Wichita, and *Michael A. Barbara,* of Topeka, were with them on the briefs for the appellees.

The opinion of the court was delivered by

FATZER, J.: This action was instituted by Magnolia Petroleum Company, hereafter referred to as Magnolia, to enjoin the State Commission of Revenue and Taxation, hereafter referred to as the commission, from (1) compelling Magnolia to furnish certain financial data and information required by Schedules 1 to 1c, inclusive, on the commission's ad valorem tax assessment forms with respect to the assessment of its gas gathering pipe lines located in Grant, Finney, Haskell, Kearny and Stevens counties; (2) attempting to

assess or assessing its liquid fuel extraction plant located at Hickok, Grant county, Kansas; (3) imposing penalties upon it for failing to furnish such financial data and information or refusing to return for assessment purposes said extraction plant; and (4) certifying any assessment of such property to the county clerks of such counties for the tax assessment year of 1955. The commission demurred to Magnolia's petition on the ground it failed to state a cause of action against the commission and in favor of Magnolia. The trial court sustained the demurrer, and Magnolia has appealed and seeks review of the order sustaining the commission's demurrer.

Insofar as here pertinent, the allegations of the vertified petition are summarized as follows: Magnolia is a private corporation organized under the laws of the state of Texas; is authorized to do business in seventeen other states, and has its principal place of business at Dallas, Texas. It is authorized to carry on the business of producing, refining and marketing petroleum and petroleum products in the state of Kansas. It has a capitalization of $125,000,000. The assessed valuation of its tangible property in states other than Kansas is $144,716,302, and in Kansas, exclusive of the property involved in this action, is $6,427,440. It owns and has oil and gas properties and wells in all areas in central and western Kansas in which oil and gas are produced.

Magnolia owns and produces natural gas from some 156 gas wells in Grant, Haskell, Kearny, Finney and Stevens counties. To facilitate the marketing of the natural gas, it constructed, in 1948, a "gathering" pipe-line system of steel pipe ranging from four to twenty-four inches in diameter, which was connected to each well to permit the natural gas produced to flow to a point at Hickok for sale to the Cities Service Gas Company and delivery to its pipe line. In January, 1950, Magnolia constructed an "extraction" plant at Hickok and since that time has run the natural gas produced from its gas wells through its extraction plant in a continuous and uninterrupted movement for sale and delivery to Cities Service, and has extracted and processed therefrom liquid fuel by-products, viz., natural gasoline, butane, propane, and liquefied petroleum gas, after which the "dry" gas is delivered to the pipe line of Cities Service and sold to that company at the same point and in the same manner as before the extraction plant was constructed. All liquid fuel by-products are stored or sold at the extraction plant.

In addition to processing gas from its own wells, Magnolia

purchases gas from five other wells jointly owned by it and three other companies, which it runs through its gathering lines. About one-third of the gas processed at its extraction plant is purchased from Columbian Fuel Corporation and delivered to Magnolia's extraction plant through that company's pipe line. All gas purchased by Magnolia is produced from gas wells located in the state of Kansas.

Since the completion of Magnolia's gas gathering lines, it has returned these lines each year to the commission for tax assessment purposes on forms prepared by the commission for the assessment of pipe-line companies as defined in G. S. 1949, 79-701, *et seq.,* although noting thereon it was not a gas pipe-line company, a public utility or a common carrier and that the property rendered was not used in the business of transporting gas but merely a plant facility serving only Magnolia's private business. On April 5, 1955, Magnolia made its 1955 tax assessment return of such lines to the commission in the same manner as it had in previous years. Attached to Magnolia's petition as Exhibit A was a copy of this return to which later reference will be made. Following the construction of the extraction plant in 1950, it was returned each year, with the consent of the commission, to the county clerk of Grant County for tax assessment purposes on forms prepared by the commission and was assessed locally in that county. On April 1, 1955, Magnolia filed its 1955 tax assessment return for the extraction plant with the county clerk as in previous year.

Prior to 1955 the commission had not required Magnolia to supply the financial data and information requested on Exhibit A, particularly on the lower portion of Schedule 1 and on Schedules 1a, 1b and 1c. Exhibit A is lengthy, consisting of fifteen separate sheets, the first five of which are designated as Schedules 1 to 1c, inclusive, requiring financial data and information of Magnolia's total operations and properties in seventeen other states listed separately from its Kansas properties, and all of its Kansas properties including those unrelated to the gathering lines and extraction plant involved in this controversy.

Following the filing of Magnolia's 1955 tax assessment return of its gathering lines, the commission refused to accept that return and directed Magnolia to return, in addition to these lines, the extraction plant for assessment purposes as a pipe line company as defined in the statute. Thereafter the commission directed the county clerk of Grant County not to accept the tax assessment re-

turn of the extraction plant and informed that official the commission would assess it. Accordingly, the county clerk did not assess the extraction plant for the tax year 1955. The commission informed Magnolia that if it did not include the extraction plant in its 1955 tax assessment return and give full and complete financial data and information required on Schedules 1 to 1c, inclusive, the commission would assess both the gathering lines and the extraction plant from such information as it had available, would add 50 percent for failure of Magnolia to file a proper return, and impose all statutory penalties prescribed by G. S. 1949, 79-708.

Magnolia alleged that its gathering lines and its extraction plant were separate and distinct properties; that neither was dependent upon the other and were at times operated separately from the other; that it was not a pipe-line company, public utility or a common carrier, and that neither its gas gathering line nor its extraction plant constitutes a pipe line or pipe-line property as defined in G. S. 1949, 79-701, *et seq.;* that the extraction plant was not within the jurisdiction of the commission for tax assessment purposes since it was used in Magnolia's private business as a manufacturing or processing plant and should be assessed locally in the same manner as a refinery or other plants of similar nature located in Grant County or other counties in Kansas are assessed; that the commission had unreasonably, arbitrarily and capriciously ordered, directed and demanded that Magnolia include in its tax assessment return the extraction plant, which would be discriminatory and confiscatory and constitute the taking of its property without due process of law and deny it the equal protection of the law in violation of the 14th Amendment; that if G. S. 1949, 79-701, *et seq.*, is applicable to its gas gathering lines or its extraction plant, the statute is unconstitutional and void as taking its property without due process of law and denying it the equal protection of the laws in contravention of the 14th Amendment; that it was not engaged in the business of transporting gas or oil in pipes and does not own pipes or pipe lines for that purpose in the state of Kansas; that its gathering lines are used exclusively for gathering and marketing its own gas as incident to its private buisness; that it is not authorized to transport gas for other persons or for hire and does not do so; and, that it owns no franchises in Kansas, does not have the right of eminent domain and is not subject to regulation by any federal or state regulatory body.

Magnolia further alleged that it does not have and cannot obtain

the financial data and information required on Schedules 1 to 1c, inclusive, except by completely changing its system of accounting and expending needless hundreds of thousands of dollars to obtain such information; that Schedules 1 to 1c, inclusive, require information pursuant to the uniform system of accounts prescribed by the Interstate Commerce Commission for use by interstate common carriers, which are regulated by federal and state regulatory bodies and call for more than 150 items of accounts involving the ownership and operation of extensive properties of Magnolia in seventeen other states, which are beyond the commission's jurisdiction; that the commission has arbitrarily and capriciously demanded that Magnolia furnish all of the financial data and information required on said schedules; that such information has no bearing or connection whatever with the assessment of its gathering lines; that the commission is not entitled to have such information, and would, if Magnolia is required to furnish the same, amount to a confiscation of its property; that if the commission is not enjoined it will assess both properties for the year of 1955 at an arbitrary and excessive valuation and will add exhorbitant penalties; and, that Magnolia is without adequate remedy at law and will suffer and sustain irreparable injury and loss unless given relief by a court of equity.

The prayer was that the commission be enjoined from (1) compelling Magnolia to furnish the financial data required by Schedules 1 to 1c, inclusive, with respect to the assessment of its gas gathering lines; (2) attempting to assess or assessing its extraction plan; (3) imposing penalties upon Magnolia for failure to furnish the financial data required in Schedules 1 to 1c, inclusive, or refusing to return its extraction plant for assessment purposes, and (4) certifying any assessments of its property to the county clerks of the counties in which its gathering lines or the extraction plant are located.

On June 7, 1955, a temporary restraining order was issued by the trial court restraining the commission from doing any acts contrary to those contained in the prayer of the petition. On June 22, 1955, the trial court granted a temporary injunction against the commission and on August 23, 1955, the parties entered into a stipulation, which was approved by the trial court, to the effect that during the pendency of the action the property of Magnolia would be tentatively assessed, apportioned and taxed by the same taxing agencies as those for the tax year 1954 and that the tenta-

tive valuation for 1955 would be the same amounts at which said property was assessed and taxed for the year 1954. Thereafter, the commission filed a motion to make Magnolia's petition definite and certain and to strike. This motion was overruled *in toto* by the trial court, following which, the commission demurred to the petition for the reason that it did not state facts sufficient to constitute a cause of action. Magnolia has appealed from the order of the trial court sustaining the commission's demurrer.

The commission contends that Magnolia's petition was defective in two respects: first, it failed to affirmatively allege the action taken by the commission was "illegal," and second, in the absence of such an affirmative allegation, the remedy of injunction authorized by G. S. 1949, 60-1121 was not a substitute for the administrative remedy provided by G. S. 1949, 79-1702, and at most, Magnolia's petition alleged a mere attempted erroneous assessment. In *Sherwood Const. Co. v. Board of County Comm'rs*, 167 Kan. 421, 207 P. 2d 409, it was said:

"It is also well to observe G. S. 1947 Supp. 79-1702, in substance, provides that where a taxpayer has a grievance *not otherwise remediable* he can have redress through the state tax commission. (*Kaw Valley Drainage Dist. v. Zimmer*, 141 Kan. 620, 624, 42 P. 2d 936; *Thompson v. Chautauqua County Comm'rs*, supra, p. 154.) The instant grievance is expressly made remediable by the injunction statute relied upon by appellant. (G. S. 1935, 60-1121.)

"Although it would be entirely appropriate and perhaps a good practice for a taxpayer to first present a grievance such as this to the commission even though he claimed the assessment and levy were actually illegal, rather than merely erroneous, nevertheless courts cannot compel the taxpayer to adopt that procedure when the legislature makes it merely a cumulative and not an exclusive remedy." (l. c. 425.)

Does the petition allege that the action taken by the commission was illegal? We think it does. On demurrer, allegations of a petition are to be taken as true. Here, they have been summarized in detail and it would serve little purpose to reiterate them. It is elementary that allegations of a petition of unconstitutional action by an official board charges illegality. As stated in the Sherwood case *supra*, courts cannot compel a taxpayer to first present to the commission a grievance such as is alleged in the petition when the legislature makes such remedy merely cumulative and not exclusive.

The question presented is one of public as well as of a private nature. It is important to many taxpayers and to taxing officials. The nature and importance of this question is one that should not

be determined in the absence of full disclosure of all pertinent facts. We think it is a much safer and better practice to have issues joined by appropriate pleadings and to have the case tried on its merits rather than to attempt to obtain a ruling on the important question of law by demurrer to a petition, which may not disclose all essential and material facts.

We do not now pass upon the question whether Magnolia is or is not a pipe-line company as defined in G. S. 1949, 79-701, *et seq*. We hold that the allegations of the petition and its exhibit, when given all reasonable inferences to which they are entitled, state a cause of action against the commission when tested by the demurrer.

The judgment is reversed with directions to the district court to overrule the demurrer and to proceed to hear the case upon its merits when issues are framed by appropriate pleadings of the parties.

It is so ordered.