No. 41,752

KANSAS STATE TEACHERS ASSOCIATION, INC., *Appellant,* v. MYRON CUSHMAN, County Clerk of Shawnee County, and JOHN TOWLE, County Assessor of Shawnee County, *Appellees.*

(351 P. 2d 19)

Opinion filed April 9, 1960.

*Walter G. Stumbo,* of Topeka, argued the cause, and *Robert R. Irwin* and *Mary Schowengerdt,* of Topeka, were with him on the briefs for appellant.

*Lester M. Goodell,* of Topeka, argued the cause, and *Adrian Allen,* County Attorney, *Margaret McGurnaghan, Marlin S. Casey, Raymond Briman, Thomas R. Sewell* and *Gerald L. Goodell,* of Topeka, were with him on the briefs for appellees.

The opinion of the court was delivered by

FATZER, J.: This was an action in mandamus to compel the defendants to remove the plaintiff's property located at 715 West Tenth Street, Topeka, Kansas, from the tax rolls of Shawnee County. Judgment was entered for the defendants and the plaintiff has appealed.

During 1956 the appellant filed an application with the State Commission of Revenue and Taxation requesting that its real and personal property situated at the above address, more particularly

described as lots 49, 51, 53, 55, 57, 59, 61 and 63 on Tenth Street, West, in the City of Topeka, be declared exempt from taxation for 1956 and subsequent years. Following a hearing, and on June 18, 1956, the commission issued its order declaring the appellant's property to be exempt from taxation and ordered it removed from the tax rolls of Shawnee County.

Pursuant to the commission's order, the appellee county clerk removed appellant's property from the tax rolls for the year 1956, but in 1957 the appellees placed the property back upon the tax rolls for assessment and taxation. Subsequently, the appellant commenced this action and in its motion for an alternative writ alleged *inter alia* that the commission, by its order of June 18, 1956, found appellant's real and personal property "to be used exclusively for educational purposes within the meaning of the exemption granted by the Constitution of the State of Kansas, Article 11, Section 1, which finding was affirmed by the Commission in its order on rehearing dated September 20, 1956." And further, by the same order, it found such property "should be and the same is hereby ordered removed from the tax rolls of Shawnee County, Kansas." No other claim or basis for tax exemption was alleged. The motion further alleged "that the uses, functions and purposes of the property in question remain the same as they were when the matter was determined by the Commission."

Summarized, the appellees' answer alleged that the orders of the commission were illegal and void; that there was no competent evidence before the commission to show that appellant's property was used exclusively for educational purposes as provided in Article 11, Section 1 of the constitution of the state of Kansas; that appellant's property was not exempt from taxation under the provision of the constitution or laws of the state of Kansas, and that the appellees, by virtue of their offices, took official action by placing appellant's property upon the tax rolls of Shawnee County pursuant to G. S. 1949, 79-101 which requires that all property in the state of Kansas, both real and personal, not expressly exempt, be subject to taxation.

On May 1, 1959, the cause was tried to the district court upon an agreed stipulation of facts, various exhibits attached thereto, and the transcript of both hearings before the commission. The stipulation of facts provided that, among other things, the transcripts were subject to objection by either party as to the competency or relevancy of the testimony. The appellees submitted written ob-

jections to portions of the testimony upon the ground of incompetency. While the district court made no rulings upon those objections, it is presumed the court considered only the competent evidence introduced before the commission. Neither party requested findings of fact, nor did the court on its own initiative make findings of fact, other than that recited in its judgment that the evidence failed to show appellant's property to be so used as to be exempt from taxation under Article 11, Section 1, of the constitution of Kansas, or under the provisions of G. S. 1949, 79-201.

A summary of the evidence follows: The appellant association was founded in 1863 and incorporated as a non-profit corporation in 1876. Its activities have been carried on, for the most part, in Topeka, and its present headquarters is a modern two-story brick and rock building containing approximately 29,000 square feet of space. The building was constructed in 1955 at a cost of approximately $500,000. No public funds were used in its construction; the money to build it was raised from the sale of appellant's old headquarters building and a building assessment against each member.

The facilities within the building consist of a library for teachers and the public; offices for appellant's professional and clerical staff of approximately 20 full and part time employees; a mimeographing, duplicating and mailing room; extensive book provisions to maintain the "Reading Circle"; a large storage room in the basement with hydraulic elevator connecting the various floors; board of directors conference room; committee room; kitchenette, and rest rooms. The entire second floor consists of conference rooms and an auditorium which seats up to 500 persons. The conference rooms and auditorium are made available to the teachers and many local and state educational, professional, religious and governmental organizations without charge, except a small janitorial charge is made to non-educational organizations. No part of appellant's property is rented to any person or organization, and no part of its activities result from funds supplied through any public treasury.

In its early days the association was a convention type organization. As early as 1914 there was need for a full time secretary, and as a result of the increase in school population in the state and a corresponding demand for higher standards in the teaching profession, the appellant has grown until its present membership is approximately 23,000 persons composed of 21,500 teachers and

1500 students in training, school board members, librarians and a few other interested persons.

The objects of appellant as set forth in its charter and in its constitution are:

"The support of the general educational interests of the State of Kansas, the collection and dissemination of educational intelligence, and the mutual improvement of its members in all that pertains to the teacher's vocation."

The organizational structure of appellant is composed of a board of directors (of which the State Superintendent of Public Instruction is an ex officio member), an executive secretary, and professional and clerical staff members. Directors of the board are elected in accordance with appellant's by-laws and are required to be members of the association, however, they may reside in different communities throughout the state. There are numerous committees, the membership of which, for the most part, is made up of the association's members who likewise live in various parts of the state. Some committee meetings are held in the appellant's headquarters building and others are held elsewhere. Members of the committees are appointed by the board of directors or elected at the annual meetings of the association. In the main, the committees are of three types: the Constitutional Committee, which has five standing committees; the Regular Committee, which has sixteen standing committees, and the Special Committee, of temporary tenure, having special assignments. The committees pertinent to this controversy are hereafter noted.

The appellant has three sources of revenue: annual membership dues; advertising in the "Kansas Teacher," a magazine edited and published by appellant, and gross income from the sale of books through the "Reading Circle," hereafter referred to. Annual dues are graduated, depending upon the salary of the teacher; the average payment is $7 a year, plus $2 to the building fund. Total revenue received by the appellant for the fiscal year ending June 30, 1955, was $344,799 of which $149,916 was from membership dues, and $57,905 was contributions to the building fund.

The Kansas Teacher is a monthly magazine having a circulation of over 25,000 within the state of Kansas. It is appellant's official publication and contains its annual reports and also the official reports of the State School Retirement Board. Its editorial staff is made up primarily of personnel at the headquarters building, and approximately 80 percent of the magazine contains material which

could possibly be used in the classrooms of schools. There is reserved in the magazine a section for the State Superintendent of Public Instruction where he may address teachers of the state. In publishing the magazine, there is no cost whatsoever to the state. Approximately two-thirds of the total cost is paid by the appellant and one-third by advertising. Advertising is sold in the conventional manner; various state teachers' associations band together to secure national advertising through co-operative agents in Chicago, and in Kansas a member of the appellant's staff devotes part of his time to soliciting local businesses.

During legislative sessions, the appellant edits and publishes a brochure entitled "K. S. T. A. Legislative News" which is distributed to more than 7,000 teachers, legislators and members of the public. The brochure is a digest of legislative activities, and includes, among other things, compilation of quotations from Kansas newspapers and other material of an informative nature. For the most part, the brochure is edited by appellant's director of professional relations whose office and the equipment used is housed in the appellant's building. In this connection, the activities of the director include, but are not limited to, the contacting of members of the legislature to encourage passage of bills for the improvement of schools and matters pertaining to the teaching vocation.

The appellant uses its headquarters building in carrying on an extensive public relations program. It assists and co-operates with school boards throughout the state by furnishing information on sick leave for teachers, teachers salary schedules, retirement and personnel problems with teachers, and through its informal placement service, assists in locating teachers for employment; it assists and has a close co-operation with state and local P. T. A. organizations; it assists the Kansas Legislative Council on school surveys, furnishes information and serves in an advisory capacity; it has established libraries in the state industrial schools for both boys and girls, and is a member of and contributes financially to the Kansas Council for Children.

For more than 30 years the appellant has provided a service to educational institutions in the state through an activity known as the Reading Circle which is an arrangement with the State Superintendent of Public Instruction to carry out the provisions of the school library law. In 1925 the legislature enacted Chapter 226, Section 1 ( G. S. 1949, 72-1501 ) directing that the district board

or the board of education of each school district expend annually from its general funds a sum of not less than $5 to be used to purchase books for the libraries and if schools employ more than one teacher, the minimum sum expended may not be less than $5 for each teacher employed. Since the enactment of that statute, the state of Kansas has not provided facilities for making available books and materials to the schools which they are required to purchase annually. In view of that fact, the State Superintendent of Public Instruction has continuously urged and encouraged the appellant to maintain and operate the Reading Circle. When the appellant's new headquarters building was constructed, the State Superintendent of Public Instruction requested that it be designed and made large enough to house and conduct the Reading Circle activities, and approximately one-third of the building space is presently used for storage and shelving space, receiving and mailing facilities, together with all necessary equipment, fixtures and personnel. The Reading Circle is carried on voluntarily by the appellant pursuant to a "gentleman's agreement" with the State Superintendent of Public Instruction. There is no written contract. The activity could be terminated by the appellant, but its termination would need be consistent with obligations which it has with various publishers.

The Reading Circle has an eighteen-member adoption committee consisting of county superintendents, librarians, school teachers and administrators, which screens and approves books offered by publishers. Those purchased are catalogued by appellant and the catalogues are distributed free of charge to all county superintendents, teachers, principals, librarians and other interested persons and organizations. It is from the catalogues that books are purchased for the school libraries and classrooms, and upon order, the books are shipped or mailed immediately without charge. The appellant makes no profit from the sale of books, but it does receive a volume discount from publishers of approximately $24,500 annually. Books sold annually by the appellant to the schools and libraries, if purchased from a book store would cost approximately $180,100, based upon the publisher's list price. The same books made available through the Reading Circle cost approximately $138,700, or an annual saving of approximately $41,400 to the schools of the state. Thus, primarily, the Reading Circle is maintained for the benefit of the schools of Kansas.

As previously indicated, one of the objectives of appellant is the mutual improvement of its members in all that pertains to the teaching vocation. In that connection, the appellant sponsors and maintains annual teachers' conventions at five or six different locations in the state, the purpose of which, through programs planned by the teachers, is to improve the teacher on the job. Through its Educational Planning Committee the appellant acts as a clearing house on program planning. Those annual conventions cost appellant approximately $30,000 a year.

The appellant has a Committee on Security which acts as a grievance committee. Although that committee has no authority to adjust differences, a teacher may request assistance in an instance where she feels she has been unfairly treated or discharged without cause by a school board, or, upon the request of some organization of the community, study the cause of the teacher's complaint, and, acting as a disinterested third party, bring about understanding where misunderstanding prevailed.

Another service the appellant maintains through its Group Insurance Committee is its endorsement of the Blue Cross-Blue Shield insurance program for teacher participation on a local basis, in case of illness or accident, and a group health and accident insurance program through the North American Accident Insurance Company of Chicago, but to be eligible a teacher must be a member of appellant's association. The appellant has an insurance board, approved by the insurance company, through which all contested claims are cleared and adjusted. The expenses of members of the board are paid by the insurance company on accounts submitted by appellant's executive director. That arrangement was proposed by the insurance company and the appellant receives no income from it. Also, the appellant maintains a retirement program for its staff members by which employees pay 4 percent of their earnings into a retirement fund, which amount is matched by appellant, to be used as a supplement to social security upon retirement.

We shall first consider the appellant's principal contention that its organization is educational and as a result of the design and conduct of its activities, the property in question is used exclusively for educational, scientific and literary purposes within the meaning of Article 11, Section 1 of the constitution of Kansas and G. S. 1949, 72-201, and is exempt from taxation. The appellant asserts the

undisputed evidence disclosed that its every activity is conceived and executed to encourage the promotion of intellectual and moral improvement among the citizens of the state; that those activities have resulted in better schools, better educational facilities, improved courses of study, higher standards and qualifications for teachers in Kansas schools, and above all, a better educated and better schooled citizenry of the state, that its property is used in such a way that it is different from other property in that the public at large, not private individuals, benefits from its uses and that there is not a classroom or a school district, or a boy or girl in any Kansas school, which has not or who does not receive direct benefits from the appellant's activities, and, finally, that it is more nearly an educational institution than any other non-school activity in the state and is so closely allied with school activities and educational programs that it is difficult to distinguish between the two, except, of course, that the schools are public or parochial.

Our statute (G. S. 1949, 79-101) reads:

"That all property in this state, real and personal, not expressly exempt therefrom, shall be subect to taxation in the manner prescribed by this act."

That part of Article 11, Section 1 of the constitution here pertinent reads:

"All property used exclusively for  .   .   .   educational  .   .   .   purposes .   .   .   shall be exempt from taxation."

G. S. 1949, 79-201 in part reads:

"That the property described in this section, to the extent therein limited, shall be exempt from taxation: *First, all buildings used exclusively  .   .   . as public school houses  .   .   .   and used exclusively for the accommodation of schools. .   .   ."* (Emphasis supplied.)

Several cases have previously been before this court in which the question of exemption of property for educational purposes has been considered. Three landmark cases are *Washburn College v. Comm'rs of Shawnee Co.,* 8 Kan. 344; *St. Mary's College v. Crowl, Treasurer, &c.,* 10 Kan. 442, and *Stahl v. Educational Assoc'n,* 54 Kan. 542, 38 P. 796.

In the Washburn case the land in question was unoccupied and unimproved, but was intended to be used in the future as a permanent site for the college. In denying a claim for tax exemption under the contention that the land was "used exclusively" for edu-

cational purposes within the purview of Article 11, Section 1, Mr. Justice Brewer, in speaking for the court, said:

". . . To bring this property within the terms of the section quoted it must be 'used exclusively for literary and educational purposes.' This involves three things, first, that the property is used; second, that it is used for educational purposes; and third, that it is used for no other purpose. . . ." (1. c. 349.)

In the St. Mary's case the land was owned by the college and was sought to be declared exempt as being used "exclusively for educational purposes" under Article 11, Section 1. It adjoined the college grounds upon which the college buildings were located, and was used for the purpose of teaching agriculture to some eighty Indians under a contract between the college and the government. All of the produce raised on the land was either used to feed the Indians, employees and missionaries, or sold to the public and the proceeds applied for educational purposes. In denying the claim for exemption, it was held:

"Property, in order to be exempt from taxation, because used for educational purposes, must be used directly, immediately and exclusively for such purposes."

In the opinion it was said:

". . . Property used partially for educational purposes, and partially for some other purpose, is not exempt. Even property used mainly for educational purposes, but not exclusively, is not exempt. . . . It is solely the *use* of the property which determines whether the property is exempt or not; *Washburn College v. Shawnee County*, 8 Kan. 344. It makes no difference who owns the property, nor who uses it. Property used exclusively for educational purposes is exempt, whoever may own it, or whoever may use it. Property not used exclusively for educational purposes, (if otherwise taxable,) is not exempt, whoever may own it, or whoever may use it. *And this use must be direct and immediate, and not indirect or remote.* . . . But when property is used for some other purpose, as well as for the purpose of education, then this other purpose is supposed to bring in an income adequate to pay the taxes on the property, and then a tax on said property is not a tax on education, but it is a tax on the other purpose. If it were possible to apportion the taxes so as to make the property pay taxes in proportion to its two uses it would probably be well. . . . But it is impossible to make any such apportionment. All property may be used to some extent, mediately or immediately, for educational purposes. But the extent to which it is so used cannot well be measured. Its use for educational purposes, as compared with its other use, may be infinitely greater or infinitely smaller than this other use. The use for educational purposes may be nearly the whole of the use, or it may be only a very small proportion thereof. And whatever it may be,

it cannot be accurately defined, measured, or known. Hence we see the wisdom of the constitutional provision requiring that property shall be used exclusively for educational purposes in order to be exempt. For, if property used only partially for educational purposes should be exempt, it would not be long until an exemption would be claimed for nearly all property, as being used in some slight or remote degree for educational purposes, and all rules of equity and equality in taxation would be obliterated and destroyed. . . ." (Emphasis supplied.) (l. c. 449, 450, 451.)

In the Stahl case the Kansas Educational Association of the Methodist Episcopal Church sought to restrain the county treasurer from collecting taxes on certain property upon the ground it was exempt from taxation under a charter granted by the legislature which provided:

" 'That all the property or funds, real, personal, or mixed, that may be received, held or appropriated by or for said association, *for the exclusive purposes of religion or education* . . . shall be forever exempt from taxation.' " (Emphasis supplied.) (l. c. 542.)

The charter of that association provided:

" 'That the objects of the association are and shall be, *the promotion of education in Kansas,* under the patronage of the Kansas and Nebraska conference of the Methodist Episcopal church, or such conferences as may be hereafter formed out of the said conference, within the bounds of the territory of Kansas, *and for the mutual benefit of the members of this association.' "* (Emphasis supplied.) (l. c. 543.)

The property was rented by the association, and the rent applied for the support and maintenance of Baker University. The exemption was denied upon the ground that the statute which required the association to receive, hold or appropriate its property "for the exclusive purposes of . . . education only" did not permit it to be used for lease, investment or profit, notwithstanding the income was applied directly for educational purposes.

While conceding that the Stahl case is distinguishable from the instant case, we think the analogies to be drawn support the conclusion that the appellant's property is not being used exclusively for educational purposes. In its brief the appellant states:

" 'There can be no question in the instant case concerning the matter of income from appellant's property. It is shown beyond any question of doubt that appellant's property produces no income, *except that which returns directly for educational purposes.' "* (Emphasis supplied.)

The associations in the Stahl case and in the instant case were organized and used, in part, for the promotion of education and for the improvement of their members. Both organizations produced

income from the use of their properties and contend that since the income was applied exclusively to educational purposes, the properties should be declared exempt. The court denied the exemption in the Stahl case, holding that the use of the property was not directly and exclusively for educational purposes.

The recent case of *Defenders of the Christian Faith, Inc. v. Horn*, 174 Kan. 40, 254 P. 2d 830, is likewise pertinent. That was an action to compel the removal of plaintiff's property from the tax rolls of Sedgwick County. In denying the writ, the court adopted the commission's findings that the use by the plaintiff corporation of its building as administrative offices for the control and supervision of its missionary and church activities was not a direct exclusive religious use as contemplated by Article 11, Section 1 of the constitution and G. S. 1949, 79-201. In that case it could not be questioned but that the plaintiff corporation was a religious organization. The decision emphasized that the ownership of the property was not material, but only the use of the property. The evidence established that the plaintiff published three magazines in the building which were partly religious and partly political; that the plaintiff sold books in the building (mostly religious); that the building housed a prayer room, a file room, an editorial room, a shipping room, and a radio station. The income received was applied to religious uses. This court held that, notwithstanding the plaintiff was a religious organization, its headquarters building, which was not a church as that term is ordinarily understood, was not used directly and exclusively for religious purposes, and denied the claimed exemption.

In *Sunday School Board of the Southern Baptist Convention v. McCue*, 179 Kan. 1, 293 P. 2d 234, the action was to declare exempt from taxation the plaintiff's place of business operated as the Baptist Book Store. The literature sold in the store was religious in character. The net income from sales was used by the plaintiff for religious purposes assisting in its missionary and religious work in Kansas, but the book store was not used as a place of public worship. In the opinion Mr. Justice Thiele, speaking for the court, said:

"In connection with the word 'exclusively', plaintiff seems perp'exed because that word has not been explicitly defined in any of our previous decisions, and it quotes a portion of a definition from Webster's New International Dictionary, Second Edition. The word is an adverb form of the verb 'exclude' defined in the above dictionary as 'To shut out; to hinder from entrance or admission; to refuse participation, enjoyment or inclusion,' and as used in the adverb form

means, among other things, to the exclusion of all others, without admission of others to participate, only, solely, purely. *We think it implicit in our many decisions where the word has been used, it is in the sense that the use made must be only, solely, and purely for the purpose stated in our constitution, and without admission to participate in any other use. . . ."* (Emphasis supplied.) (l. c. 5.)

See, also, the recent case of *Midwest Solvents Co. v. State Comm. of Rev. & Taxation,* 183 Kan. 104, 325 P. 2d 311, which held that a corporation whose net earnings inure to the benefit of a charitable institution but whose charter authorized it to engage in commercial enterprises was not entitled to exemption from income tax as a corporation organized and operated exclusively for charitable purposes.

Assuming, but in no sense deciding, that the Reading Circle activity, as the appellant contends, is a direct and exclusive educational use of the property, it is only *one* of the many uses, and in deciding this controversy we must measure its *total* use. Unquestionably, the appellant has contributed materially to standards which place Kansas high in national comparison with other state educational programs by professional goals set by the teachers themselves working through the appellant, and its activities in that respect are educational in design and execution and have resulted in better instruction to school children, nevertheless, the appellant association is a professional organization of teachers, and the benefits of its activities carried on from its headquarters building flow directly to its teacher-members and only indirectly to the instruction and training of youthful students. Moreover, the evidence disclosed that in conducting its many and varied programs, the appellant has engaged in specific activities for the mutual improvement of its teacher-members which show rather conclusively they are for the benefit of its individual members and have no direct educational purpose whatsoever. For instance, the annual conventions are held "to improve the teacher on the job." That is, of course, a direct benefit to the teacher and to the teaching profession generally. And, through its Security Committee the appellant is available to assist any teacher-member, or any organization of a community in which a teacher personnel problem may arise. In addition, the appellant has endorsed group medical, health and accident insurance for individual member participation. Likewise, the publishing of the K. S. T. A Legislative News is not a use of appellant's headquarters building for an exclusive educational purpose. Like the director's contact of members of the legislature, that publication

is primarily to acquaint and solicit the support of the public and members of the legislature for the passage of bills which would in general improve all that pertains to the teacher vocation. Thus, the inescapable conclusion is that the headquarters building is used, in part at least, for the individual benefit of the teacher-member; consequently, it is not used directly, immediately, solely, and exclusively for educational purposes as those terms are defined by the decisions of this court so as to entitle the property to exemption from taxation under Article 11, Section 1 of our constitution.

The appellant also contends the property is exempt from taxation under the provisions of G. S. 1949, 79-201. Perhaps this section enlarges but does not restrict the general words used in our constitution above quoted. We think none of the subsections specifically enumerated in the statute immediately referred to afford a basis for exempting the property sought to be exempt. This court has consistently held that taxation is the rule, exemption is the exception, and one claiming an exemption because of the use of the property has the burden of showing that its use comes clearly within the exemption claimed (*Clements v. Ljungdahl*, 161 Kan. 274, 167 P. 2d 603; *Sunday School Board of the Southern Baptist Convention v. McCue*, supra, and cases cited p. 7). The appellant has failed to sustain the burden of clearly showing its right to exemption.

In arriving at the foregoing conclusion, we have examined, not overlooked, the authorities cited by the appellant. It stresses *Kansas Wesleyan Univ. v. Saline County Comm'rs*, 120 Kan. 496, 243 P. 1055. That decision is not helpful to the appellant. The property there involved was a building owned by the college, in which meetings of the faculty and other officials were held, situated across the street from the campus, in the same block with dormitories for students, and occupied as a residence by the president and his family. In granting the injunction, this court held that the holding of the official meetings and school gatherings in the building characterized it as a part of the machinery by which the affairs of the college were administered, and that such use was purely educational. That is not the case here.

Mention will briefly be made of appellant's contention concerning a procedural question. The claim is made that the county assessor had no authority to place appellant's property upon the tax rolls after it had been removed by the county clerk in com-

pliance with the orders of the commission which, it contends, were prima facie valid and enforceable, and in the absence of judicial review may not be ignored by the county clerk and county assessor, and that the proper procedure required Shawnee County to seek injunctive relief to determine the validity of the orders in the first instance. The point is not well taken. This court has consistently held that county officials may defend against orders of the commission upon the ground that they are erroneous as a matter of law. (*Robinson v. Jones,* 119 Kan. 609, 240 P. 957; *Chicago, R. I. & P. Rly. Co. v. Ford County Comm'rs,* 138 Kan. 516, 27 P. 2d 229; *Beacon Publishing Co. v. Burke,* 143 Kan. 248, 53 P. 2d 888.)

We have thoroughly reviewed the record and conclude the district court did not err in finding the evidence failed to show the appellant's real and personal property to be so used as to be exempt from taxation under the provisions of our constitution and statutes heretofore discussed.

Finding nothing approaching reversible error, the judgment of the district court is affirmed.