No. 46,020

SIGMA ALPHA EPSILON FRATERNAL ASS'N, a Corporation, *Appellant*, v. BOARD OF COUNTY COMMISSIONERS OF DOUGLAS COUNTY, KANSAS, and BESSIE M. BENNETT, County Treasurer, Douglas County, Kansas, *Appellees*.

ALPHA KAPPA LAMBDA BUILDING ASS'N, a Corporation, *Appellant*, v. BOARD OF COUNTY COMMISSIONERS OF DOUGLAS COUNTY, KANSAS, and BESSIE M. BENNETT, County Treasurer, Douglas County, Kansas, *Appellees*.

ALPHA KAPPA LAMBDA BUILDING ASS'N, a Corporation, *Appellant*, v. BOARD OF COUNTY COMMISSIONERS OF DOUGLAS COUNTY, KANSAS, and BESSIE M. BENNETT, County Treasurer, Douglas County, Kansas, *Appellees*.

SIGMA ALPHA EPSILON FRATERNAL ASS'N, a Corporation, *Appellant*, v. BOARD OF COUNTY COMMISSIONERS OF DOUGLAS COUNTY, KANSAS, and BESSIE M. BENNETT, County Treasurer, Douglas County, Kansas, *Appellees*.

(485 P. 2d 1297)

Opinion filed June 12, 1971.

*Walter J. Kennedy*, of Hoskins, King, Springer, McGannon and Hahn, Kansas City, Missouri, argued the cause, and *Fred N. Six*, of Barber, Emerson & Six, of Lawrence, was with him on the brief for appellants.

*Daniel A. Young*, county attorney, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

Fatzer, J.: These four consolidated actions were filed pursuant to K. S. A. 79-2005 to recover real and personal property taxes paid under protest. The actions also sought to enjoin the defendants, and each of them, from the assessment and collection of such taxes in the future.

The actions were consolidated for trial, and tried to the district court. There is no error alleged as to rulings on motions pertaining to the pleadings; no error is alleged as to the admission or exclusion of evidence, and since there were no post-trial motions, no error is alleged in that respect. The only evidence introduced at the trial was by the plaintiffs, hence, there is no dispute as to the evidence.

The parties make no claim of error with respect to the findings of fact made by the district court, and concede the findings correctly recite all of the facts necessary for decision. The error claimed revolves around the issue whether there was substantial evidence to support the findings of the district court that the real and personal property owned by the plaintiff corporations did not constitute property used exclusively for educational purposes within the purview of the Kansas Constitution and statutes. (Art. 11, Sec. 1 of the Constitution, and K. S. A. 79-101 and 201 *Third.*)

The district court made findings of fact and conclusions of law based upon the stipulation contained in the pretrial order and the evidence offered and received at the trial. Since all the issues are concisely stated and discussed in the district court's memorandum opinion, we quote its findings and conclusions in full:

"1. That the questions of fact and of law in cases numbered 24907 and 24925 now pending in this Court are the same as the questions of fact and of law which are involved in each of the above captioned cases which have been consolidated for trial.

"2. That the real and personal property taxes which were assessed against the respective properties of each of the plaintiffs in the above captioned cases for 1968 (the real estate assessments being as shown on Exhibits 21 through 29 and the personal property assessments being as shown in Exhibits 31 and 32) and which taxes became due on December 20, 1968 and June 20, 1969, were paid under protest by each of said plaintiffs on or before said due dates,

and within 30 days thereafter the above captioned cases were filed to recover the taxes so paid, the amounts involved in each case being as follows:

| Case No. | Amount paid under protest |
|----------|---------------------------|
| 25146 | $1985.38 |
| 25147 | 2619.94 |
| 25260 | 2619.92 |
| 25261 | 1985.34 |

The personal property shown on Exhibits 30 and 31 consists of such items as refrigerators, deep freezes, vacuum cleaners, dishwashers, radio and record players, television sets, silverware, pianos and organs, furniture in the dining room, living room, bedrooms, basement, rugs, carpets, drapes, the filing cabinets, dishes, airconditioners, pictures, mirrors, and the food mixers.

"3. The two fraternities involved in this litigation are local chapters of member fraternities of the National Interfraternity Conference. Each chapter is organized and conducts its affairs through two basic units: the active chapter, and the alumni corporation. Each corporation is organized as a nonprofit unit, each is exempted from payment of income tax, and each so conducts its operation that neither it nor one of its members realizes or receives a profit therefrom. The function of the corporation is to acquire and hold title to the chapter house and its furnishings in order that members of the active chapter will have a home in which to live and take part in the activities of the fraternity while attending the University of Kansas as students. The active chapter is an unincorporated association, the membership of which is composed of students of the University of Kansas who have become affiliated with the chapter through the process known as 'rush.' All male K. U. students are eligible to become members of such organizations, but only those who are asked and accept become members. Such members are first pledges, and following initiation, become actives. All initiated members of the active chapter become members of the corporation after they cease being students and thereby become alumni.

"4. The two fraternities involved herein are Alpha Kappa Lambda which shall hereinafter be referred to as AKL, and Sigma Alpha Epsilon which shall hereinafter be referred to as SAE.

"5. The building site and chapter house owned by the AKL corporation has a book value of approximately $315,000. Prior to a remodeling program estimated to cost from $275,000 to $300,000 and to have been completed by the fall of 1969, the building site and chapter house owned by the SAE corporation had a book value in excess of $230,000. The capacity of the AKL house is 82, and upon completion of the remodeling SAE will have rooms for 93 men. The chapter houses of AKL and SAE are so constructed that from 80 to 90 per cent of each is designed for or readily adaptable to study by members of each chapter.

"6. The major source of the income required to operate the AKL and SAE chapter houses is the house bill which is charged to and paid by each of the active members of such fraternities. The house bill of each fraternity is made up of three items: board, room, and dues. The amount of this house bill is so calculated that the amount budgeted for each item will be met. In this

connection each member of each chapter is required to sign an individual leasing agreement approved by his parent in which he agrees to make house payments for board, room and duties in the amounts stated in such agreement. Although these leasing agreements are made with the corporation of each chapter, the house bills are collected and accounted for by the treasurer of each active chapter. From the house bills so collected each active chapter pays the accruing grocery bills, utility bills, wages, repairs, national chapter obligations and other chapter expenses incurred, and also pays its alumni corporation the amount budgeted as rent. This rent which the corporation receives from the active chapter is budgeted and used for the retirement of debt, for taxes, for repairs, for replacement or enlargement of chapter house or furnishings, and other miscellaneous expenses. Plaintiffs in these cases are the respective alumni corporations of AKL and SAE which have paid the taxes in question under protest.

"7. The SAE house bill for the school year ending June, 1969, was $108 per month of which $12 to $16 was for dues. The SAE house bill for the school year beginning September, 1969 was figured at $115 per month of which $20 is for dues, $40 is for board and $55 is for rent. In recent years the AKL house bill has been $105 per month of which $12 to $14 is for dues. The amount received for dues is used by each chapter for payment of national chapter assessments and local chapter activities. Except for the amount charged for dues by fraternities the cost of living in a fraternity is about the same as the cost of living in a University Dormitory. For the year ending June 30, 1968, out of total expenses of $72,854.52 SAE paid the following amounts for the activities indicated:

| Activity | Amount |
|---|---|
| Yearbook | $182.50 |
| Campus activities | 304.63 |
| Intramurals | 190.09 |
| Homecoming | 168.57 |
| Rushing (to 9-30-67) | 2750.00 |
| Newspapers | 234.75 |
| Newsletters—Alumni Relations | 571.07 |
| Convention | 381.23 |
| Flowers & Gifts | 198.14 |
| Social | 2739.94 |
| Total | $7720.92 |

For the eleven months ended May 31, 1968, out of total expenses of $75,280 AKL had activities expenses as follows:

| Activity | Amount |
|---|---|
| Campus activities | $350.00 |
| Intramurals | 217.00 |
| Rushing | 4269.00 |
| Subscriptions | 242.00 |
| Convention Work Shop | 48.00 |
| Flowers & Gifts | 149.00 |

| | |
|---|---|
| Social | 1421.00 |
| Homecoming | 143.00 |
| Yearbook | 145.00 |
| Total | $6984.00 |

"8. In order that they may operate in connection with K. U., AKL and SAE must, and have been recognized as duly constituted fraternities by the University and as such are subject to certain University controls, which controls are carried into effect for the most part through the Office of the Dean of Men and through the Interfraternity Council to which all fraternities must belong and contribute. Included among the controls just mentioned are: no alcoholic beverage may be had or served on fraternity premises; fraternity kitchens are inspected at least once a year; each fraternity must have either a resident director or housemother approved by the Dean of Men; in selecting its members fraternities are prohibited from discriminating on account of race, creed or national origin; and during rush week rushees must register with the Dean of Men's office and a list of pledges must be filed with designated offices shortly after pledging has been accomplished.

"9. In selecting pledges AKL and SAE are interested in young men with good high school records, with scholarship ability, with character and personality, with outside interests, and who will be compatible with the members of their respective fraternities. The initiation ritual is secret in SAE but not in AKL. The grade average of fraternities is better than that of non-fraternity men by about one-tenth of a point. In SAE a pledge must have a 1.2 average in order to be initiated and after initiation all actives must maintain a 1.0 average to remain in good standing. AKL requires a 1.3 average prior to initiation. Both AKL and SAE recognize that belonging to a fraternity affords the male student the opportunity to select those with whom he will live and work, and spend some of his leisure time while attending the University. Both AKL and SAE require that a member must be a student in K. U. in order to live in the chapter house. If a member of either chapter is dropped as a student he is also dropped as an occupant of the house.

"10. Through the Interfraternity Council fraternities plan to cooperate with the University in providing some meeting space for small study groups in connection with the College within a College program. AKL and SAE also take part in Greek Week, have three to five major parties a year, send a representative to the annual convention of the national organization of each, participate in the Rock Chalk Review, write alumni news letters, provide cultural opportunities for its members, take part in a charitable project in the community, and engage in intramural sports.

"The issues to be resolved are as stated in the pre-trial order, as follows:

"1. Is the real and personal property owned by the plaintiff corporations, property used exclusively for educational and benevolent purposes within the scope of Article XI, Sec. 1 of the Kansas Constitution and K. S. A. 79-101 and 201?

"2. Are the furnishings in the house of the plaintiffs exempt from taxation as household goods not used for profit as contemplated by Article XI, Sec. 1 of the Kansas Constitution and K. S. A. 79-201?

"From the facts as found it is concluded that:

"1. The Court has jurisdiction of the subject matter and of the parties in each of the actions involved herein.

"2. That both of the issues above stated should be resolved against the plaintiffs. As to issue No. 1, see: *Alpha Tau Omega v. Douglas County Commissioners*, 136 Kan. 675; and annotation in 66 ALR 2d 904. As to issue No. 2, see this Court's Memorandum of Decision in case number 24060, *Association of Sigma of Gamma Phi Beta, Inc., et al. v. Brookover, et al.*, in which the identical issue was resolved against the plaintiff fraternities and sororities therein, included among which was SAE.

"3. That the respective claims of the plaintiffs herein to a refund of the taxes paid under protest and for an Order enjoining the assessment of real and personal property taxes against them in the future should be denied and the taxes so paid under protest should be released to the County general fund."

In harmony with its findings and conclusions, the district court entered judgment in favor of the defendants, and each of them, and against the plaintiffs.

The plaintiffs contend the district court erred in finding the evidence failed to show their real and personal property to be so used as to be exempt from taxation under the Constitution and statutes heretofore referred to. We are of the opinion, the findings of the district court are amply supported by the evidence, and we conclude that, as did the district court, this case is controlled by *Alpha Tau Omega v. Douglas County Comm'rs*, 136 Kan. 675, 18 P. 2d 573, where it was held:

"A house which is used by members of a college fraternity as a home while attending college is not used exclusively for literary, educational or scientific purposes so as to cause it to be exempt from taxation under section 1 of article 11 of the constitution.

"Where it is sought to establish that property is exempt from taxation on account of a constitutional or statutory ground, the one claiming the exemption must bring himself clearly within the terms of the provision." (Syl. ¶¶ 1 and 2.)

It is abundantly clear from the evidence and the findings of the district court, that in addition to the educational use stressed by the plaintiffs, the property is used for fraternal purposes including initiations, for alumni reunions, homecoming activities, parties, rest, recreation, entertainment of guests, rush activities, and other social activities, and that the members of the active chapter of each fraternity participate in those activities as a fraternal group. In addition, the members send representatives to the conventions and meetings of the national fraternity and publish newsletters for its members and alumni. Over ten percent of the Sigma Alpha Epsilon income

is budgeted for activities as is nearly nine percent of the Alpha Kappa Lambda income.

Under the many decisions of this court, including *Washburn College v. County of Shawnee,* 8 Kan. * 334; *St. Mary's College v. Crowl,* 10 Kan. * 44; *Sunday School Board of the Southern Baptist Convention v. McCue,* 179 Kan. 1-5, 293 P. 2d 234, and *Kansas State Teachers Ass'n v. Cushman,* 186 Kan. 489, 500, 501, 351 P. 2d 19, the plaintiffs' claim that whether the property in question is "used exclusively" for educational purposes, means whether the property is "used primarily" for that purpose, cannot be sustained. The two terms are not synonymous, and our decisions so hold. The case of *Kansas Wesleyan Univ. v. Salina County Comm'rs,* 120 Kan. 496, 243 Pac. 1055, upon which the plaintiffs rely, was discussed at length and distinguished in *Alpha Tau Omega v. Douglas County Comm'rs,* supra, as being inapplicable to support their claim. The *Wesleyan* case was likewise discussed and distinguished as being inapplicable to support the claim of exclusive educational use of property claimed to be exempt from taxation in *Kansas Teachers Ass'n v. Cushman,* supra. It was held the *total* use of the property must be measured, and that since the headquarters building owned by the association was used in part for the individual benefit of the teacher members, the property was not used directly, immediately, solely and exclusively for educational purposes as those terms are defined by the decisions of this court. And so here.

We next turn to the district court's conclusion the furnishings of the plaintiffs' chapter houses were not exempt from taxation as household goods not used for the production of income as contemplated by Article 11, Section 1 of the Constitution.

The identical issue here presented, was involved in the case of *Association of Sigma of Gamma Phi Beta, Inc., et al. v. Brookover, et al.,* No. 24060, in Douglas district court. In rendering judgment in that case, the district court filed a memorandum decision which states succinctly the grounds upon which the court's decision was based denying the plaintiffs' claimed exemption of "household goods." Because the issues and contentions are thoroughly discussed in the court's memorandum opinion, the pertinent portions are quoted:

"6. The sole issue in this case is: Are the furnishings in the houses of plaintiffs, which furnishings consist of such items as are listed in finding No. 4, exempt from taxation? The contentions of the parties on this issue are in

substance as follows: Plaintiffs contend that the furnishings in their respective chapter houses are household goods as contemplated by Article 11, Sec. 1 of the Kansas Constitution and that such household goods are not used for the production of income. Defendants, on the other hand, contend that such furnishings are not household goods as contemplated by said constitutional provision, but that even if they are household goods, such household goods are used by plaintiffs for the production of income.

"The constitutional provision under which plaintiffs claim exemption was adopted November 3, 1964, is Article 11, Sec. 1, and reads as follows:

" 'The legislature shall provide for a uniform and equal rate of assessment and taxation, except that mineral products, money, mortgages, notes and other evidence of debt may be classified and taxed uniformly as to class as the legislature shall provide. All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, and all household goods and personal effects not used for the production of income, shall be exempted for taxation.'

"Prior to its amendment in 1964, that portion of said Article 11, Section 1, which follows the words 'charitable purposes' read as follows: 'and personal property to the amount of at least two hundred dollars *for each family*, shall be exempted from taxation.' ( Emphasis supplied.)

"As will be noted the exemption of personal property to the amount of $200 *for each family* was dropped from the constitution and in its place the provision exempting all household goods and personal effects not used for the production of income was adopted.

"In 1965 the legislature amended the tax exemption statute in order to make provision for the change in Article 11, Sec. 1 of the Constitution. Such amendment is found in K. S. A. 1967 Supp., 79-201 and reads as follows:

" 'That the property described in this section, to the extent herein limited, shall be exempt from taxation: . . .

" '*Thirteenth.* All household goods and personal effects not used for the production of income: *Provided,* That the terms household goods and personal effects when used in this act, except as otherwise specifically provided, shall include all items of furniture, cooking utensils, refrigerators, deep freezers, washing and drying machines, dishwashers, stoves, ranges, ironers, vacuum cleaners, sewing machines, radio and record players, television sets, shop and hobby equipment *used in or about the home,* fishing equipment ( not including boats), bicycles, yard and garden equipment, firearms, golf clubs, photographic equipment, jewelry, luggage, musical instruments, and air conditioners if not a part of the central heating and air conditioning system.' " ( Emphasis supplied.)

"Applying the constitutional and statutory provisions just mentioned to the facts as above found, it is concluded that the furnishings of plaintiffs as assessed by Douglas County, Kansas are not exempt from taxation.

"The conclusion reached is based upon an interpretation of the constitutional provision in question in light of the $200 exemption which it re-placed and in light of the legislative definition of 'household goods and personal effects' in the 1965 amendment to the tax exemption statute. In this connection it is to be noted that the $200 exemption was for each *family*. When this exemption

was replaced by exempting *household* goods *and* personal effects not used for the production of income it is clear that the word 'household' was intended to be descriptive not only of the kind of goods which were to be exempt but also of the place where such goods were to be located and used at the time an exemption was claimed—and in both instances the intention was that goods in the household or family home *and* the personal effects of the members of such household or family *not* used for the production of income were to be exempt. The relationship between the corporate plaintiffs and the members of their respective active chapters in the operation of their several chapter houses cannot be classified as a family or a household nor can their respective house furnishings be classified as 'household goods' as those words are used in Article 11, Sec. 1 of the constitution. Beyond this there is no question but that plaintiffs do use their household furnishings for the production of income, which income plaintiffs use for the purposes hereinbefore found. The fact that plaintiffs are non-profit corporations which are exempt from income taxes does not in itself establish that plaintiffs are not using the furnishings in their respective chapter houses for the production of income.

"In their brief plaintiffs rely in part for relief in this action upon the fact that fraternities and sororities make a significant contribution to the University in the areas of housing, social and campus activities and in attracting better than average students to K. U. by rushing them. Commendable as this contribution is it has no probative value in respect to the issue in this case. An alumni corporation of a fraternity or sorority just is not a householder nor is it possessed of 'household goods and personal effects' as those words are used in the constitutional provision in question.

"A party claiming an exemption from taxes has the burden of proof to bring himself clearly within the exemption and in this connection the provision creating the exemption is to be strictly construed. (*Stahl v. Educational Ass'n,* 54 Kansas 542; *Taggart v. Holcomb,* 81 Kan. 879; and *Topeka Presbyterian Manor v. Board of County Comm'rs.,* 195 K. 90; see also 51 Am. Jur. 530, Sec. 527, *et seq.*). Plaintiffs' evidence does not sustain the burden placed upon them by the law and their respective claims for return of taxes paid under protest on the theory that the taxes were illegally assessed are denied."

This court is of the opinion the district court correctly interpreted and construed Section 1, Article 11 of the Constitution, and the provisions of Section 79-201 here in question. It is apparent the exemption afforded by Section 1, Article 11 for "household goods not used in the production of income" was intended to replace the former constitutional exemption of "$200 for each family." Likewise, the legislature, in amending 79-201 and describing the property to the extent therein limited, provided that household goods and personal effects not used in the production of income, shall include "all items of furniture, cooking utensils, refrigerators . . . *used in or about the home* . . ." (Emphasis supplied.)

The legislative intent to not exempt the personal property of

the plaintiff corporations is clear. The word "household" has been defined as substantially synonymous with the word family, and means those dwelling under the same roof with a domestic head. (2 Black's Law Dictionary, p. 1462.) If doubt persists as to the meaning intended, one need look only to K. S. A. 77-201 which defines household as follows:

"*Twenty-fifth.* The term 'householder' shall be construed to mean a person of full age, and owning or occupying a house as a place of residence, and not as a boarder or lodger."

Members of each of the fraternities here involved do not legally comprise a family, and the corporate owners of each of the chapter houses and the personal property therein situated, may not be said to be householders.

The plaintiffs lastly argue the assessed personal properties are not used in the production of income, and attempt to show that the monthly house bills of the fraternity members are calculated to break even for the year's operation. The point is not well taken. The evidence clearly showed the plaintiffs are corporate owners which rent the houses and furnishings for cash, the proceeds of which are used to retire debts and acquire assets. The plaintiffs receive in excess of $140,000 income each year which they could not do without the property they claim is exempt from taxation.

The plaintiffs have not established any fact which tends to distinguish the operation of their fraternity houses from that of any other private person or corporate owner engaged in the sale of board and room to college students, and they are not entitled to the exemptions claimed. (*Alpha Tau Omega v. Douglas County Comm'rs,* Supra.) In the latter case, this court quoted with approval a portion of Mr. Justice Brewer's opinion for the court in *Washburn College v. County of Shawnee,* supra, as follows:

" 'All property receives protection from the state. Every man is secured in the enjoyments of his own, no matter to what use he devotes it. This security and protection carry with them the corresponding obligation to support. It is an obligation which rests equally upon all. It may require military service in time of war or civil service in time of peace. It always requires pecuniary support. This is taxation. The obligation to pay taxes is coextensive with the protection received. An exemption from taxation is a release from this obligation. It is the receiving of protection without contributing to the support of the authority which protects. It is an exception to a rule and is justified and upheld upon the theory of peculiar benefits received by the state from the property exempted. Nevertheless, it is an exception, and they who claim under an exception must show themselves within its terms.' " (l. c. 680.)

The district court properly concluded the plaintiffs failed to show themselves to be within the terms of any constitutional or statutory exemption from taxation, and it did not err in entering judgment in favor of the defendants.