No. 60,525

In the Matter of the Application of INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS and HELPERS for Exemption from Ad Valorem Taxation in Wyandotte County, Kansas.

(747 P.2d 781)

Opinion filed December 11, 1987.

*Thomas M. Sutherland,* of Holbrook, Ellis & Heaven, P.A., and *Ronald D. Garrison,* of the same firm, of Kansas City, argued the cause and *Reid F. Holbrook,* of the same firm, and *Donald H. Corson,* of Kansas City, were with Mr. Sutherland on the brief for appellant.

*John M. Duma,* associate county counselor, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal from the district court's dismissal of an appeal by The International Brotherhood of Boilermakers from an order of the State Board of Tax Appeals denying tax exemption to certain personal property.

The International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers is a labor union with a membership of approximately 135,000 from the United States and Canada. It has been headquartered in Kansas City, Kansas, since 1881. It seeks exemption from personal property ad valorem tax in Wyandotte County for furniture, typewriters, word processors, and other office equipment used in the headquarters. The headquarters takes up one floor and part of two others in a nine-floor building owned by the Brotherhood. The Brotherhood

rents out the other space in the building. No exemption is sought for real estate, nor for equipment which is used for maintaining the building. The Brotherhood does not seek exemption, for example, for a truck used for taking junk out of the building because the truck is not used exclusively for union purposes.

The personal property for which the Brotherhood is not seeking an exemption has a total market value of approximately $30,000, while the property for which it claims exemption has a value of approximately $203,000. The value of the property sought to be exempted has been stipulated to by the parties.

The Brotherhood is separate from the local unions, but is supported by them through participation in a percentage of the local union dues. Its share of local dues averages about $8.60 per month per union member, which amounts to a total of approximately $1,161,000.00 per month. The headquarters is made up of six major departments and employs approximately 130 people.

The Research and Education Department accumulates data on specific industries for use in collective bargaining. It also sponsors university-affiliated union leadership programs. The Occupational, Safety and Health Administration Department is funded in part by a Department of Labor grant. The department researches and provides information to union members about occupational and safety hazards inimitable to the occupations of its members, such as asbestos poisoning and welding accidents.

The National Transient Division collects dues directly from those whose work requires them to travel from place to place (putting up water towers, for example), and thus do not belong to a local union. In return, the Brotherhood provides safety and health information, apprenticeship training, and collective bargaining representation.

The Publications Department distributes pamphlets on work place hazards and precautions workers can take to avoid them. This department publishes the Boilermakers and Blacksmiths Reporter, which in addition to health and safety reports provides union members with news on union benefits and results of union labor negotiations.

The Publications Department also publishes pamphlets on "legislative education action programs." The Brotherhood engages in political activity. For example, the Brotherhood re-

ported in the Reporter it had taken "steps to buttress LEAP, the Brotherhood's political arm." Members were advised that "LEAP-endorsed candidates won in 70 percent of the congressional contests." On the next page, the Brotherhood's president reported the Brotherhood would soon announce where workers should send their "petitions, postcards, and letters" protesting taxation of fringe benefits. 23 Boilermakers & Blacksmiths Reporter 1-2 (Dec. 1984).

The Department of the International President and the Department of the International Secretary-Treasurer are administrative departments which seek to carry out the purposes of the Brotherhood as set out in its constitution:

"to implement the exercise of the natural right of workers to organize that they may more securely work with dignity; to establish the contentment of freedom and security; to enable its members to participate actively in self-government; to unite into one International Brotherhood all workers eligible for membership, regardless of religion, race, creed, color, national origin, age, or sex; to secure improved wages, hours, working conditions and other economic advantages for the members through collective bargaining, through advancement of our standing in the community and in the labor movement, and through other lawful methods; to provide educational advancement and training for officers, employees and members; to safeguard and promote the principle of free collective bargaining, the rights of workers, farmers and consumers, and the security and welfare of all the people by political, educational and other community activity; to protect and strengthen our democratic institutions and preserve and perpetuate the cherished traditions of democracy; to protect and preserve the union as an institution and in the performance of its legal and contractual obligations." Purposes and Objectives § 2.

The administrative departments, in furtherance of these goals, maintain a defense fund for the legal protection of the union. The departments' duties include making payments to the A.F.L.-C.I.O., of which the Brotherhood is an affiliate, maintaining a strike fund, and investing Brotherhood dues so that their return may also be used to further these purposes. The president and his assistants engage in labor negotiations at many different locations throughout the year.

The Brotherhood seeks exemption from ad valorem taxation of tangible personal property in Wyandotte County used in furtherance of its union objectives, claiming exemption on the ground such property is used exclusively for benevolent purposes under K.S.A. 1986 Supp. 79-201 and Article 11, § 1 of the

Kansas Constitution. The State Board of Tax Appeals denied both the Brotherhood's application and its motion for a rehearing. The Brotherhood appealed to the district court.

The district court denied the appeal on authority of *Kansas State Teachers Ass'n v. Cushman,* 186 Kan. 489, 351 P.2d 19 (1960). After filing an appeal with the Court of Appeals, the Brotherhood moved to transfer the appeal to this court pursuant to K.S.A. 20-3017 and Supreme Court Rule 8.02 (235 Kan. lxxvi), which motion was granted.

Let us now examine the applicable rules of law. In determining whether an applicant is entitled to an exemption from taxation, we have developed certain principles which are not challenged by the Brotherhood. First, the party claiming tax exemption has the burden of establishing the use of the property is clearly within the exemption. "[T]axation is the rule, exemption is the exception." *Cushman,* 186 Kan. at 501. Second, we strictly construe statutory and constitutional exemption provisions. All doubts are resolved against exemption. *Trustees of The United Methodist Church v. Cogswell,* 205 Kan. 847, 851, 473 P.2d 1 (1970). Third, the question is not whether the property is used partly for exempt purposes but whether it is used exclusively for those purposes. *Lutheran Home, Inc. v. Board of County Commissioners,* 211 Kan. 270, 275, 505 P.2d 1118 (1973).

The Brotherhood seeks exemption both under statutory provisions and the Kansas Constitution. Article 11, § 1 of the Kansas Constitution provides that:

"All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, and all household goods and personal effects not used for the production of income, shall be exempted from property taxation."

K.S.A. 1986 Supp. 79-201 provides:

"The following described property, to the extent herein specified, shall be and is hereby exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

. . . .

"*Second.* All real property, and all tangible personal property, actually and regularly used exclusively for literary, educational, scientific, religious, benevolent or charitable purposes . . . ."

The Brotherhood does not argue it is a charity, but claims

exemption as a benevolent organization, contending this court should distinguish between the terms.

The only issue presently before this court is whether the Brotherhood's use of its property could be held *exclusively* benevolent even if we were to define "benevolent" broadly and distinguish it from "charitable."

We have no hesitation in finding that trade unions perform great public service and perform many benevolent acts. However, the purpose of a union, or any trade association, is to promote the well-being of its membership. We hold such purpose is not benevolent. A trade union collects union dues, and bargains collectively for wages, hours, working conditions, and fringe benefits for its membership. It performs a political function by endorsing and supporting candidates. All of those functions are non-benevolent functions. On the other hand, unions operate hospitals, give food to the needy, collect funds for United Way and other charities, and perform many other acts of good will. Thus, a trade union is organized to benefit its membership financially, but also performs benevolent tasks as well. Its benevolent function is not its purpose, but is merely incidental to its purpose of promoting the well-being of its members. The Brotherhood's actions are consistent with other trade associations such as the Chamber of Commerce, the National Association of Manufacturers, the National Association of Corporate Executives, etc. Of course, the office furniture and equipment used to carry on the business of the trade union is also used to perform the benevolent functions. But such personal property is not used *exclusively* for benevolent purposes and is thus not exempt from taxation.

The judgment of the trial court is affirmed.