No. 68,701

THE WOMAN'S CLUB OF TOPEKA, KANSAS, *Appellant*, v. SHAWNEE COUNTY, KANSAS, THE BOARD OF SHAWNEE COUNTY COMMISSIONERS, and THE SHAWNEE COUNTY APPRAISER, *Appellees*.

(853 P.2d 1157)

Opinion filed May 28, 1993.

*Gerald L. Goodell,* of Goodell, Stratton, Edmonds & Palmer, of Topeka, argued the cause, and *Catherine M. Walberg,* of the same firm, was with him on the briefs for appellant.

*Russell P. Wright,* assistant county counselor, argued the cause, and *Linda P. Jeffrey,* county counselor, was with him on the brief for appellees.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The Woman's Club of Topeka (Club) appeals from the district court's decision which affirmed a Board of Tax Appeals (BOTA) order. BOTA denied the Club's application for exemption from ad valorem taxes pursuant to Art. 11, § 1(b) of the Kansas Constitution and K.S.A. 1992 Supp. 79-201 *Second.* The appeal was transferred to this court from the Court of Appeals pursuant to K.S.A. 20-3018(c).

At various times in the past, the Club has been exempted from ad valorem taxes. The most recent order of exemption dates from April 9, 1974. At that time, BOTA ordered that Lots 278, 280, 282, 284, 286, 288, Topeka Ave., Topeka, "be not entered on

the tax rolls of Shawnee County, Kansas, for 1974 and be exempt from taxation so long as it is owned by the applicant herein and used exclusively for charitable and/or benevolent purposes."

When the Club moved to a new building in 1982, exemption for the new building and real property was not sought. The Club asserts that it was "through inadvertence" that exemption was not sought. The Club added that "its volunteer board merely failed to realize the necessity for annually requesting exemption." There are no record references in the appellant's brief for these assertions. In the affidavit which appears to comprise the principal evidence submitted to BOTA, there is no ·explanation why exemption was not sought. In it the following explanation was offered for why the Club renewed its request: "Taxes in recent years have increased significantly such that they are a threat to the existence of the club. Thus, the Woman's Club of Topeka is again seeking to claim exemption for its real property from ad valorem taxation."

The Club now is located at 5221 S.W. West Drive, Topeka. In 1991, the Club filed an application for exemption from ad valorem taxes with BOTA. The statute which was identified as authorizing the requested exemption is 79-201 *Second*.

The statement of facts provided to BOTA by the Club included a joint affidavit of Gerald Goodell, attorney for the Club, and Mary Hafenstine, president of the Club, photocopies of the Club's annual brochures from the years 1987 through 1991 (referred to in the joint affidavit as 1988-1991 annual reports), and an affidavit of Adeline Towle, 1990-91 treasurer of the Club.

The following pertinent statements appear in the affidavit of Goodell and Hafenstine:

"15. As indicated by the 1988-1991 annual reports of the club (Exhibit D to Attachment A), the activities engaged in by the Woman's Club of Topeka are benevolent, charitable, literary or educational. The club makes significant monetary donations to scholarships as well as to the community in general. For example, the club donated $1,599.28 to Stormont-Vail School of Nursing, $1,242.54 to Washburn University, and $489.50 to other charitable and benevolent functions in 1989 through 1990.

"16. As indicated by the annual reports, the building has been used to promote music, literature, religion, benevolent and educational purposes programs. (Exhibit D to Attachment A.)

"17. For example, on May 2, 1991, Pastor Susan Candea-Kromm spoke to the club on 'Spiritual Growth.' On February 21, 1991, the Topeka High School madrigals performed at the club. In 1989 and 1990 and in 1991, the club made visits to hospitals and nursing homes. . . .

. . . .

"19. The club also uses and has used the property for bridge clubs, flea markets, and receptions. These activities do not prevent the club from obtaining an exemption because as shown by Exhibit D to Attachment A, these uses are minimal in scope and insubstantial in nature and are incidental to the exempt purposes of the club. K.S.A. [79-201]*Second.*

"20. The club allows the World Wide Church of God to use the club's building on Saturday and allows the Church of Jesus Christ of Latter Day Saints to use the building on Sundays. The churches use the property for religious purposes.

"21. That the club allows the churches to use space at the club's building does not render it ineligible for the exemption. The club does not allow such use as an investment; the club is merely being reimbursed for the actual expense incurred by the club in allowing the church to use the space for religious purposes. As indicated by the Affidavit of Adeline Towle, Treasurer, (Exhibit E to Attachment A), the churches use the building one-third of the time. The total annual cost for maintaining the building is $50,094.63. (Affidavit of Adeline Towle). One-third of $50,094.63 is $16,698.21. The churches pay only $15,055.00 of the expenses. The use of the property by the churches fits under K.S.A. 79-201 *Second.* The club is being reimbursed for the actual expense of using the property for tax exempt purposes."

Included in the Club's annual brochures are treasurers' reports. In the 1989-90 treasurer's report, for example, the disbursements totaled $65,415, with $179 for Gifts and Bequests, $3,331 for Scholarship Expense, and $409 for Charity and Benevolence.

Also included in the annual brochures are listings of "Special Days" and calendars of Club Programs. In the 1990-91 listing of "Special Days," for example, there are a number of card parties and duplicate bridge benefits, a style show, flea market, new and used sale, quilt show, hobby day, fine arts and open house memorial service, member recognition day, scholarship day, and Christmas charities day. The regular Club Programs for 1990-91 occurred on Thursdays, October through June. The calendar lists presentations by many musicians, scholars, and gardeners and by literary, religious, and political figures. The meetings begin at approximately mid-morning, sandwich a luncheon, and continue into the afternoon.

When the Club appealed BOTA's order to the district court, it added to the record a separate affidavit of Mary Hafenstine which lists "examples of educational, religious, and literary programs" which had been presented to members from 1985 through June 1992. The affidavit contains several affirmative statements of public participation in evening events. It does not appear from the record that public attendance is expected or encouraged for the Thursday programs.

Hafenstine's supplemental affidavit also contains the following information about charitable activities:

"2. The Woman's Club uses its property to make yearly donations to: Hospice, the Topeka Rescue Mission, the Kansas Children's Service League, the Salvation Army, Let's Help, the Capper Foundation, the Topeka State Hospital, TARC, Kansas Neurological Center, the Marian Clinic, the Better Business Bureau of Northeast Kansas, the Ronald McDonald House, Community Eye Care, KTWU Channel 11, Kansas State Historical Society, and YWCA. Club members volunteer for the Christmas Angel Tree and other volunteer activities.

"3. The Club started the Daisy Chain at Topeka High School and furnished clothes and shoes for students in the chain who could not afford clothing. The Club instigated traveling libraries and art galleries and donated monies to purchase pictures for school rooms. The Club donated funds to help purchase the Lincoln [statue] on the State grounds. The Club provided the seats for the State Capitol grounds. The Club helped refurbish Holbrook Hall, at Washburn College in Topeka.

"4. The Topeka Woman's Club has contributed $41,427.72 to the Woman's Club 1000 Scholarship Fund at Washburn University, $28,987.11 to the Woman's Club Scholarship Fund at Stormont-Vail School of Nursing, and $24,000 in direct scholarships to Stormont-Vail School of Nursing."

The affidavit of the Club's 1991-92 treasurer, Delores Mueller, also was added to the record in the district court. The information in it is the same as the information in ¶ 21 of the affidavit of Goodell and Hafenstine and in the affidavit of Towle.

The decision of BOTA states in pertinent part:

"The Board finds that here, the applicant's primary purpose is to serve its members by providing a setting for social gatherings. The income derived from leasing the property to churches and club dues is used partially for the social enjoyment and benefit of members of the club. Under the principles set forth by the Kansas Supreme Court, the applicant's use of the property to promote the well being of its members fails to satisfy the exclusive use requirement of K.S.A. 79-201 *Second.* Furthermore, the literary, educational, benevolent and charitable uses are only incidental uses

of the property. Again, the actual use of the property is for the benefit of the members. The Board, therefore, concludes that the request for exemption should be denied."

In the district court, the Club pursued two theories. First, the Club argued that its activities have not changed substantially and relocation should not have affected its exempt status. The district court rejected this argument on the ground that the taxable status of real property may be determined anew at any time and an exemption should be based on the taxpayer's current situation. Second, the Club argued that it is tax-exempt by reason of its engaging in literary, charitable, and benevolent activities. The district court rejected this argument, too.

The district court's reasoning and ruling were stated as follows:

"The Court regards the utilization of the property on weekends as a rental space for churches as a substantial non-tax exempt purpose. Granted the money realized is not a large percentage of the support used to fund the activities of the Woman's Club, nonetheless it does rise to the level of a substantial rather than insubstantial use of the property which is, of course, the key in determining whether an exemption should be maintained. Additionally, the Court finds that the Board was correct in its determination that the principal use of the real estate upon which the Petitioner's facilities are located is for social purposes and for activities which substantially benefit the members of the Woman's Club.

"Therefore the Court is of the opinion that the Board of Tax Appeals decision was correct, was not arbitrary or capricious, and therefore should not be overturned."

The sole issue is whether the Woman's Club of Topeka is exempt from ad valorem taxes under Art. 11, § 1(b) of the Kansas Constitution and K.S.A. 1992 Supp. 79-201 *Second* on the ground that its property is used exclusively for literary, educational, benevolent, and charitable purposes.

K.S.A. 74-2426(c) provides that an order of BOTA "is subject to review in accordance with the act for judicial review and civil enforcement of agency actions," K.S.A. 77-601 *et seq.* K.S.A. 77-621 sets out the scope of review for judicial review of agency actions. It appears that the Club has invoked 77-621(c)(4), (7), and (8). Those subsections provide:

"(c) The court shall grant relief only if it determines any one or more of the following:

. . . .

(4) the agency has erroneously interpreted or applied the law;

. . . .

(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

(8) the agency action is otherwise unreasonable, arbitrary or capricious."

This court has declared that under K.S.A. 77-601 *et seq.* the scope of review is somewhat broader than the traditional scope of review. *In re Tax Appeal of A.M. Castle & Co.*, 245 Kan. 739, 741, 783 P.2d 1296 (1989).

K.S.A. 1992 Supp. 79-201 provides:

"The following described property, to the extent herein specified, shall be and is hereby exempt from all property or ad valorem taxes levied under the laws of the state of Kansas.

. . . .

"*Second.* All real property, and all tangible personal property, actually and regularly used exclusively for literary, educational, scientific, religious, benevolent or charitable purposes, including property used exclusively for such purposes by more than one agency or organization for one or more of such exempt purposes. This exemption shall not apply to such property, not actually used or occupied for the purposes set forth herein, nor to such property held or used as an investment even though the income or rentals received therefrom is used wholly for such literary, educational, scientific, religious, benevolent or charitable purposes. This exemption shall not be deemed inapplicable to property which would otherwise be exempt pursuant to this paragraph because an agency or organization: (a) Is reimbursed for the provision of services accomplishing the purposes enumerated in this paragraph based upon the ability to pay by the recipient of such services; or (b) is reimbursed for the actual expense of using such property for purposes enumerated in this paragraph; or (c) uses such property for a nonexempt purpose which is minimal in scope and insubstantial in nature if such use is incidental to the exempt purposes of this paragraph; or (d) charges a reasonable fee for admission to cultural or educational activities or permits the use of its property for such activities by a related agency or organization, if any such activity is in furtherance of the purposes of this paragraph."

In considering a claim for exemption from ad valorem taxation, the following rules of construction apply:

" '(1) Taxation is the rule; exemption is the exception. All doubts are to be resolved against exemption and in favor of taxation. *Manhattan Masonic Temple Ass'n v. Rhodes*, 132 Kan. 646, 649, 296 Pac. 734 (1931);

'(2) Constitutional and statutory provisions exempting property from taxation are to be strictly construed. *Lutheran Home, Inc., v. Board of County Commissioners,* 211 Kan. 270, 275, 505 P.2d 1118 (1973); *In re Board of Johnson County Commissioners,* 225 Kan. 517, 519, 592 P.2d 857 (1979);

'(3) The burden of establishing exemption from taxation is on the one claiming it. *Seventh Day Adventist v. Board of County Commissioners,* 211 Kan. 683, 690, 508 P.2d 911 (1973);

'(4) The question is not whether or not the property is used partly or even largely for the purpose stated in the exemption provisions, but whether it is used exclusively for those purposes. *Clements v. Ljungdahl,* 161 Kan. 274, 167 P.2d 603 (1946); *In re Board of Johnson County Comm'rs,* 225 Kan. at 519;

'(5) The phrase "used exclusively" in the constitution and statutes means that the use made of the property sought to be exempted from taxation must be only, solely, and purely for the purposes stated, and without participation in any other use. *Seventh Day Adventist v. Board of County Commissioners,* 211 Kan. 683.' " *Board of Wyandotte County Comm'rs v. Kansas Ave. Properties,* 246 Kan. 161, 166, 786 P.2d 1141 (1990) (quoting *T-Bone Feeders, Inc. v. Martin,* 236 Kan. 641, 645-46, 693 P.2d 1187 [1985]).

The Club previously enjoyed exemption from ad valorem taxation. It argues that there have been no material changes in the law or in the Club's circumstances since then and that the exemption lapsed through inadvertence. Thus, the argument continues, BOTA's order denying exemption is inconsistent with its previous rulings. The Club cites *Southwest Kan. Royalty Owners Ass'n v. Kansas Corporation Comm'n,* 244 Kan. 157, 769 P.2d 1 (1989), and *Coggins v. Public Employee Relations Board,* 2 Kan. App. 2d 416, 581 P.2d 817, *rev. denied* 225 Kan. 843 (1978), for the proposition that the inconsistency must be explained by BOTA and may constitute arbitrariness.

Shawnee County (County) contends that BOTA's orders respecting the Club have been consistent. It cites changed circumstances. The County also disagrees with the legal propositions that inconsistent decisions require explanation and that inconsistency is a ground for reversal. It relies on *In re Appeal of K-Mart Corp.,* 238 Kan. 393, 710 P.2d 1304 (1985), and *Warburton v. Warkentin,* 185 Kan. 468, 345 P.2d 992 (1959).

In its reply brief, the Club concedes that BOTA "is not bound by the doctrine of stare decisis." The Club continues to contend that BOTA's decision was arbitrary, but emphasizes the argument

that it lacked a factual basis rather than inconsistency with past decisions.

In *In re Appeal of K-Mart Corp.*, 238 Kan. 393, Syl. ¶ 3, the court stated that the "doctrine of stare decisis is not generally applicable to decisions of administrative tribunals." The context was the Department of Revenue's appeal from an order of BOTA involving use tax. The Department argued that BOTA'S action was arbitrary because it failed to follow an earlier ruling, and the court rejected the argument on the following grounds:

"The rule in Kansas . . . is that the doctrine of stare decisis is inapplicable to decisions of administrative tribunals. *Warburton v. Warkentin*, 185 Kan. 468, 345 P.2d 992 (1959); Ryan, Kansas Administrative Law with Federal References p. 18-3 (2d ed. 1985). There is no rule in Kansas that an administrative agency must explain its actions in refusing to follow a ruling of a predecessor board in a different case or that it must articulate in detail why the earlier ruling is not being. followed." 238 Kan. at 396.

The opinion in *Warburton*, which involved a question of liability for employer contributions under the Kansas Employment Security Law, contains the following statement and explanation of the rule:

"The doctrine of *stare decisis* is a strong factor in building up internal administrative law, and in influencing the judiciary in its reviews of the administrative determinations. But an administrative agency may refuse to follow its prior ruling when its action is not oppressive or it does not act arbitrarily, unreasonably, or capriciously. [Citations omitted.] . . .

. . . .

"Certainly an administrative agency, charged with the protection of the public interest, is not precluded from taking appropriate action to that end because of mistaken action on its part in the past. (*National Labor Relations Board v. Baltimore T. Co.*, [C.C.A. 4], 140 F.2d 51, 55. Certiorari denied *Baltimore Transit Co. et al. v. National Labor Relations Board*, 321 U.S. 795, 64 S. Ct. 848, 88 L. Ed. 1084.)" 185 Kan. at 476-77.

The court decided, however, that *retroactive* application of the changed administrative determination was arbitrary. 185 Kan. at 477.

The present case is not a case where inconsistency between decisions may be said to constitute arbitrariness. The Club asserts that there have been no changes in the law or circumstances which would justify changed treatment. There is nothing obvious in the record to indicate otherwise, but the Club has not furnished

either a factual or legal record which would support the legal conclusion advocated by the Club.

In this regard, the County contends that there is one previous order which bears a significant similarity to the present one. According to the affidavit of Goodell and Hafenstine; BOTA denied the Club an exemption in 1973 because it rented space to a dance club, a nonexempt use. It is this order which the County compares to the present one. In 1974, when it no longer rented the space, the Club reapplied and was granted an exemption.

The Club also contends that its property is used exclusively for literary, educational, benevolent, and charitable purposes. In support of this contention, it offers evidence of literary, educational, benevolent, and charitable activities of the Club. The record does not appear to contain, however, any evidence which directly supports the contention that these uses of the Club's property are pursued to the exclusion of all others. The record does contain extensive evidence of card parties, weekday programs, and luncheons at the Club which appear to be for the benefit and enjoyment of members.

BOTA concluded that the actual and regular use of the Club's property was in the service of its members as a setting for social gatherings and enjoyment. BOTA cited *In re Application of Int'l Bhd. of Boilermakers*, 242 Kan. 302, 747 P.2d 781 (1987), and *Kansas State Teachers Ass'n v. Cushman*, 186 Kan. 489, 351 P.2d 19 (1960), for the rule that property used for the purpose of promoting the well-being of the organization's members does not serve an exclusively benevolent, charitable, or educational purpose. BOTA also concluded that the literary, educational, benevolent, and charitable uses of the property were incidental to use of the property to promote the well-being of the Club's members. BOTA mentioned that the "income derived from leasing the property to churches . . . is used partially for the social enjoyment and benefit of members of the club."

In its motion for rehearing, the Club relied on *Topeka Presbyterian Manor v. Board of County Commissioners*, 195 Kan. 90, 402 P.2d 802 (1965). In its order denying rehearing, BOTA noted that *Topeka Presbyterian Manor* had been overruled by this court in favor of a narrower construction of "charitable." See

*Lutheran Home, Inc. v. Board of County Commissioners,* 211 Kan. 270, 278, 505 P.2d 1118 (1973).

The district court agreed that the principal use of the property "is for social purposes and for activities which substantially benefit the members of the Woman's Club." The district court also regarded the

"utilization of the property on weekends as a rental space for churches as a substantial non-tax exempt purpose. Granted the money realized is not a large percentage of the support used to fund the activities of the Woman's Club, nonetheless it does rise to the level of a substantial rather than insubstantial use of the property . . . ."

On appeal, the Club abandons its reliance on *Topeka Presbyterian Manor* and cites *Lutheran Home* for its definition of "charitable." There the court stated:

" '[C]harity' is a gift to promote the welfare of others in need, and 'charitable,' as used in the constitutional and statutory provisions, means intended for charity. In this sense charity involves the doing of something generous for other human beings who are unable to provide for themselves. To have charity there must be a gift from one who has to one who has not. Unless there is a gift, there can be no charity." 211 Kan. at 277.

Using this definition, BOTA concluded as follows:

"[T]here is no evidence showing that the use of the property is for the purpose of promoting the welfare of others in need. There is no evidence indicating that the applicant is giving a gift to one who has not. The use of the property is not for charitable purposes; rather, the property is used to promote the well being of the members."

Citing its Articles of Incorporation and donations to scholarship funds and service organizations, the Club argues that BOTA's conclusion was without foundation and, therefore, arbitrary and capricious. The Articles of Incorporation contain a general statement of the Club's purpose of "civic betterment." We do not accept that the Club seriously contends that a tax exemption may be based on this general statement. The documentation of donations (other than any which may appear scattered throughout the annual reports and were not specified by the Club) which the Club presented to BOTA in the first instance consisted of the following examples from the affidavit of Goodell and Hafenstine: "[T]he club donated $1,599.28 to Stormont-Vail School of Nursing, $1,242.54 to Washburn University, and $489.50 to

other charitable and benevolent functions in 1989 through 1990." In its motion for rehearing, the Club asserted that it "makes significant monetary donations to scholarships and to the community."

In the district court, the Club introduced the affidavit of Mary Hafenstine, in which scholarship fund donations of $41,427.72 to Washburn and $28,987.11 to Stormont-Vail were cited along with $24,000 in direct scholarships to Stormont-Vail. There is no indication over what period of time these donations were made. It is the affidavit added in the district court which the Club cites to this court.

BOTA's finding that there is no evidence that the property is used for charitable purposes overstates the deficiency of the record. There is some evidence of the Club's charitable purpose and deeds. That evidence, however, is thin and does not support the conclusion that the Club qualifies for exemption based upon charitable use of the property.

The Club also takes issue with BOTA's reliance on *Boilermakers* and *Kansas State Teachers Ass'n*. BOTA cited the former for the proposition that even a significant charitable function, where incidental to the purpose of promoting the well-being of members, would not qualify an organization for an exemption. The Club would distinguish *Boilermakers* from the present case on the ground that the obvious purpose of a trade union is to promote the well-being of its members, and the purpose of the Club is benevolent. Whatever the differences between a trade union and a fraternal organization, each is required to show for property tax exemption that the principal use of its property is exempt. *Boilermakers*, as well as *Sigma Alpha Epsilon Fraternal Ass'n v. Board of County Commr's*, 207 Kan. 514, 485 P.2d 1297 (1971), teaches that an organization's promotion of members' well-being is not an exempt use of property. This rule has general applicability to trade unions and fraternal organizations alike.

The Club suggests that the individual enjoyment members may experience stems from "working for the common good." It cites *Kansas Wesleyan Univ. v. Saline County Commr's*, 120 Kan. 496, 243 Pac. 1055 (1926), for the proposition that an incidental nonexempt use which "dovetails" with exempt uses should not cause forfeiture of exempt status. There, the college president's resi-

dence was where meetings of the faculty and other officials were held, and it was held to be exempt as used for educational purposes. This case has been distinguished repeatedly. In *Alpha Tau Omega v. Douglas County Comm'rs,* 136 Kan. 675, 681, 18 P.2d 753 (1933), the court rejected the comparison of a fraternity chapter house with the residence of the president on the ground that the latter is for the benefit of the whole school but only a small proportion of students belongs to fraternities. In *Kansas State Teachers Ass'n,* the court stated that "the holding of the official meetings and school gatherings in the [president's residence] characterized it as a part of the machinery by which the affairs of the college were administered, and that such use was purely educational." 186 Kan. at 501. The court concluded that the same could not be said of the property of the Teachers Association. When the claimants relied on *Kansas Wesleyan* in *Sigma Alpha Epsilon,* the court simply referred to its being distinguished and thoroughly discussed in *Alpha Tau Omega* and *Kansas State Teachers Ass'n.* 207 Kan. at 520.

Although the Club pursues its claim for an exemption under Art. 11, § 1(b) of the Kansas Constitution, it did not set out the text of the constitutional provision in its brief, nor did it make any independent arguments with regard to the applicability of the constitutional provision. For example, at the outset of its argument the Club quoted from 79-201 *Second* and then stated that "Article 11, § 1(b)(2) of the Kansas Constitution provides for a similar exemption."

This court has held that under both constitutional and statutory provisions, property must be "used exclusively" for exempt purposes. "The phrase 'used exclusively' in the constitution and statute means that the use made of the property sought to be exempted from taxation must be only, solely, and purely for the purposes stated, and without participation in any other use." *Seventh Day Adventist v. Board of County Commissioners,* 211 Kan. 683, Syl. ¶ 2, 508 P.2d 911 (1973). In *Boilermakers,* we said: "[T]he question is not whether the property is used partly for exempt purposes but whether it is used exclusively for those purposes. *Lutheran Home, Inc. v. Board of County Commissioners,* 211 Kan. 270, 275, 505 P.2d 1118 (1973)." 242 Kan. at 305.

The constitutional provision was changed as of November 3, 1992, but that change did not create any exceptions to the exclusive use criterion. Art. 11, § 1(b)(2) of the Kansas Constitution, which was in effect at the time of BOTA's consideration of the Club's request for exemption, provided:

"All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, farm machinery and equipment, merchant's and manufacturer's inventories and livestock and all household goods and personal effects not used for the production of income, shall be exempted from property taxation."

Since then, the phrase "manufacturers' inventories" has been qualified as "other than public utility inventories included in subclass (3) of class 2." There have been no other substantive changes in the provision.

The record will not support the conclusion that the Club uses its property "only, solely, and purely" for literary, educational, benevolent, and charitable purposes. The constitutional provision will not allow an exemption unless the specified purposes are unqualified. We therefore conclude that the Club's property is not exempt under Art. 11, § 1(b) of the Kansas Constitution.

The Club would distinguish *Boilermakers, Alpha Tau Omega,* and *Kansas Teachers Ass'n* on the ground that the statutory exemption has been broadened by the 1986 amendment to 79-201 so that exclusive use no longer means exclusive use. This court has long recognized that the legislature is not limited by the constitutional exemption:

"A statutory exemption may be broader than the constitutional one. In *Wheeler v. Weightman,* 96 Kan. 50, 149 Pac. 977, this court said:

'Yet the constitution itself provides that some real estate and some personal property shall be exempt, and contemplates that further exemptions may be made. Such exemptions must rest on the definite basis of promoting the public welfare in some peculiar and substantial way, and even then they cannot be tolerated to the extent of building up large accumulations of favored property which would disturb general equality and uniformity.' (p. 68.)

"In *Gunkle v. Killingsworth,* 118 Kan. 154, 233 Pac. 803, the court said:

'While the constitution provides that certain property shall be exempt from taxation, it does not declare that other exemptions may not be made, but does provide that property subject to taxation shall be taxed at a uniform and equal rate. So it has been held that the enumerated exemptions must be made, but that more exemptions may be made by the legislature.

(*Comm'rs of Ottawa Co. v. Nelson,* 19 Kan. 234; *Francis, Treas., v. A.T.& S.F. Rld. Co.,* 19 Kan. 303; *Comm'rs of Sumner County v. Wellington,* 66 Kan. 590, 72 Pac. 216; *Wheeler v. Weightman,* 96 Kan. 50, 149 Pac. 977.)' (p. 156.)" *Alpha Tau Omega,* 136 Kan. at 684-85.

In *Midwest Presbytery v. Jefferson County Appraiser,* 17 Kan. App. 2d 676, 843 P.2d 277 (1992), the Court of Appeals considered the 1986 addition of subsection (c) to 79-201 *Second:*

" 'This exemption shall not be deemed inapplicable to property which would otherwise be exempt pursuant to this paragraph because an agency or organization: . . . (c) uses such property for a nonexempt purpose which is minimal in scope and insubstantial in nature if such use is incidental to the exempt purposes of this paragraph.' " 17 Kan. App. 2d at 677 (quoting L. 1986, ch. 369, § 1).

The *Midwest Presbytery* court noted that in *Kansas City Dist. Advisory Bd. v. Board of Johnson County Comm'rs,* 5 Kan. App. 2d 538, 542, 620 P.2d 344 (1980), the Court of Appeals held that a "religious camp lost its tax-exempt status when it allowed nonreligious groups to use the camp facilities for a nominal fee" because it was "no longer being used exclusively for religious purposes." 17 Kan. App. 2d at 678. According to the Court of Appeals,

"[I]n response to our interpretation, the legislature amended 79-201 *Second* in 1986 to provide that the use of exempt property for nonexempt purposes which were minimal in scope and incidental to the exempt purposes did not destroy the property's tax exemption. Therefore, the amendment did broaden the definition of 'exclusive use' to include minor secular activities incidental to religious purposes." 17 Kan. App. 2d at 678.

The issue in *Midwest Presbytery* was whether the caretaker's residence at a church camp, which was built so that someone would be on the property to maintain it and provide security, forfeited the tax-exempt status of the property. The Court of Appeals remanded for determination of the factual question whether the "use of the exempt property for a nonexempt purpose is minimal in scope, insubstantial in nature, and incidental to exempt purposes." 17 Kan. App. 2d at 679.

The County compares the Club to a fraternal organization and suggests that the question whether a combination of good deeds and social benefit to members warrants tax exemption has been answered directly and repeatedly by this court. The most recent

case cited by the County is *Sigma Alpha Epsilon,* 207 Kan. 514. In that case, the court found:

"[I]n addition to the educational use stressed by the plaintiffs, the property is used for fraternal purposes including initiations, for alumni reunions, homecoming activities, parties, rest, recreation, entertainment of guests, rush activities, and other social activities, and that the members of the active chapter of each fraternity participate in those activities as a fraternal group." 207 Kan. at 519.

The problem with the fraternal activities for the organizations seeking tax exemptions is spelled out in this paragraph:

"Under the many decisions of this court, including *Washburn College v. County of Shawnee,* 8 Kan. *334; *St. Mary's College v. Crowl,* 10 Kan. *44; *Sunday School Board of the Southern Baptist Convention v. McCue,* 179 Kan. 1-5, 293 P.2d 234, and *Kansas State Teachers Ass'n v. Cushman,* 186 Kan. 489, 500, 501, 351 P.2d 19, the plaintiffs' claim that whether the property in question is 'used exclusively' for educational purposes, means whether the property is 'used primarily' for that purpose, cannot be sustained. The two terms are not synonymous, and our decisions so hold. . . . *Kansas Teachers Ass'n v. Cushman* . . . held the *total* use of the property must be measured, and that since the headquarters building owned by the association was used in part for the individual benefit of the teacher members, the property was not used directly, immediately, solely and exclusively for educational purposes as those terms are defined by the decisions of this court. And so here." 207 Kan. at 520.

The County and BOTA rely on cases decided on the principle that exclusive use meant exclusive use. The 1986 amendment of the statute to permit minimal, insubstantial, and incidental nonexempt uses would not affect the decision in this case. Consideration of the amendment does not lead to the conclusion that the decision of BOTA is incorrect or that the result in the present case should differ from the results in the earlier fraternal organization cases. BOTA found that the primary purpose of the Club is for the social benefit and enjoyment of its members. This finding is mutually exclusive with a finding that the social benefit and enjoyment of its members, a nonexempt purpose in the language of subsection (c), was incidental to the exempt purposes of the organization. Hence, accepting BOTA's view of the evidence, subsection (c) would have no application.

We do not find from the record that BOTA erroneously weighed or interpreted the evidence of the Club's activities. " 'The burden of establishing exemption from taxation is on the

one claiming it. [Citation omitted.]' " *Board of Wyandotte County Comm'rs v. Kansas Ave. Properties,* 246 Kan. 161, 166, 786 P.2d 1141 (1990) (quoting *T-Bone Feeders, Inc. v. Martin,* 236 Kan. 641, 646, 693 P.2d 1187 [1985]). We conclude that the Club has not carried its burden.

The Club also contends that its renting to church groups on weekends does not render the statutory exemption inapplicable to its property. It argues that the churches' religious use is exempt and that the income it derives only covers the actual expense of using the property. Thus, the argument continues, under K.S.A. 1992 Supp. 79-201 *Second* (b) and (d), renting to the church groups does not affect the Club's exemption status. We do not agree.

The affidavit of Goodell and Hafenstine does not state facts to support their conclusion that "the churches use the property for religious purposes." Neither the "use" nor "religious purpose" is stated. The affidavits of Mueller and Towle simply state that the churches use the building. The extent and nature of the use is not stated. We cannot determine from the record if the church's use of the property on weekends is for religious purposes and therefore an exempt use.

The Club's evidence of income and expenses is in ¶ 21 of the affidavit of Goodell and Hafenstine, which was duplicated in the affidavit of Mueller in the district court. The total annual cost of maintaining the property, including depreciation, is $50,095. Total annual rental income is $15,055. The Club's contention is that the churches rent the property for one-third of the year, the rental income approximates one-third of the annual maintenance expense ($16,698), and, therefore, the rental income is reimbursement for the actual expense of using the property.

In fact, the churches rent the property for two-sevenths of the year. Two-sevenths of the annual maintenance expense is $14,313, and the income derived from renting to the churches is $15,055; it slightly exceeds the proportionate maintenance figure. We also note that renting to the churches generates income sufficient for the Club to "recapture about seventy percent (70%) of the actual out-of-pocket expenses." Renting the property is a nonexempt use of the property. However, reimbursement of actual expenses for an exempt use of the property does not affect property which is

otherwise exempt. In any event, the Club has failed to show that it is being "reimbursed for the actual expense of using such property" or that the churches' use of the property is exempt.

As a final matter, it may be noted that the Club urges the court to consider its 501(c)(4) nonprofit federal tax status. The Club asserts that the federal nonprofit organization status is based on its showing "that its organization will operate primarily to further the common good and general welfare of the people of the community (such as by bringing about civic betterment and social improvements)." The Club also asserts that a social club would be classified as 501(c)(7). There is no development of either facts or law in support of these assertions or their applicability to the issue before this court. Indeed, the Club prefaces the assertions with the disclaimer "although not determinative." In *Lutheran Home, Inc.,* this court, in rejecting a similar contention, noted that "[u]nder the Federal Internal Revenue Code, income tax exemption does not depend so much upon how the applicant makes its money or how it uses its property as upon how it is currently spending the money it makes." 211 Kan. at 279.

We conclude that the district court did not err in finding BOTA's order denying the Club's application for an exemption from ad valorem taxes under Art. 11, § 1(b) of the Kansas Constitution and K.S.A. 1992 Supp. 79-201 *Second* to be correct, supported by substantial evidence, and not arbitrary or capricious.

The judgment of the district court affirming the order of BOTA is affirmed.